**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 10-2199
———

UNITED STATES OF AMERICA

v.

FRANK CORREA,
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Nos. 08-cr-00239-001 and 09-cr-00889-001)
District Judge: Honorable Joseph H. Rodriguez

———

Argued on June 23, 2011

Before: BARRY, AMBRO, and VAN ANTWERPEN,
*Circuit Judges*

(Filed: August 2, 2011)

Edward F. Borden, Jr. [**ARGUED**]
Earp Cohn P.C.
20 Brace Road, Fourth Floor

Cherry Hill, NJ 08034
    *Counsel for Appellant*

George S. Leone
Norman Gross [**ARGUED**]
Camden Federal Building and U.S. Courthouse
401 Market Street, Fourth Floor
Camden, NJ 08101-2098
    *Counsel for Appellee*

————

OPINION OF THE COURT

————

VAN ANTWERPEN, *Circuit Judge*.

A Task Force searching for an escaped fugitive entered the common areas of a multi-unit apartment building. The building had a locked exterior door, and an inspector entered through a partially opened side window. Once inside, the Task Force apprehended Defendant-Appellant Frank Correa in a common-use stairwell, and, after a struggle, Correa informed the inspector he had a firearm. The inspector retrieved the firearm from Correa's pocket. Correa moved to suppress the firearm and the statement he made to the inspector as fruit of an illegal seizure. The District Court denied the motion. We previously held in *United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992), that a resident of an unlocked multi-unit apartment building lacks an objectively reasonable expectation of privacy in the building's common areas. We determine today that the presence of a locked exterior door does not alter that

expectation.  Accordingly, Correa's suppression motion was properly denied.  We will affirm.

## I.

In December 2007, the Essex County Fugitive Task Force[1] ("Task Force") was searching for Jose Espinosa, an escaped inmate from Union County Jail.  The Task Force learned that two of Espinosa's known associates, Luis Luna and James Romero, were at 41 Elm Street in Elizabeth, New Jersey.  Both Luna and Romero had outstanding arrest warrants, plus criminal histories including drug dealing and firearm possession.

In the early morning hours of December 19, 2007, the Task Force prepared to execute the arrest warrants on Luna and Romero.  The Task Force was equipped with firearms, handcuffs, and bulletproof vests.  The Task Force arrived at 41 Elm Street, a multi-unit apartment building.  The front entrance to the building was locked.  A sign posted outside the front entrance read, in English and Spanish, "[N]o visitors are permitted in this building unless []accompanied by a resident, anyone not accompanied . . . by a resident will be prosecuted as a trespasser." *Appx.* 71a.

---

[1] The Essex County Fugitive Task Force included members of the Essex County Sheriff's Office and the Union County Sheriff's Office, as well as FBI agents and United States Marshals Service deputies.

Although the building's front entrance was locked, Inspector Marshal Daniel R. Potucek was able to climb through a partially open window into a common stairwell area inside the building. Once inside, Inspector Potucek opened the building's front entrance and let in the rest of the Task Force. The Task Force members positioned themselves in the first-floor hallway.

Shortly after entering the building, at approximately 2:00 a.m., the Task Force members heard male voices coming up a common stairwell from the basement. The Task Force members surrounded the entrance to the stairwell and encountered three men: Luna, Romero, and Defendant-Appellant Frank Correa. The Task Force members identified themselves to the three men and ordered them to get on the ground. Luna and Romero were immediately recognized from photographs and secured. After a short struggle, Inspector Potucek secured Correa, and Correa informed Inspector Potucek that he had a gun. Inspector Potucek retrieved a loaded firearm from Correa's front pocket.

On March 27, 2008, a Grand Jury indicted Correa, charging him with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Correa pled not guilty and moved to suppress the firearm as fruit of an illegal seizure. The District Court held a hearing on Correa's suppression motion on October 15, 2008 and denied the motion on April 9, 2009. *United States v. Correa*, 635 F. Supp. 2d 379 (D.N.J. 2009).

On November 30, 2009, the District Court granted Correa's motion to dismiss the indictment due to violations of

4

the Speedy Trial Act, 18 U.S.C. § 3162.[2]  The next day, December 1, 2009, Correa was indicted on the same charges. At arraignment on December 10, 2009, Correa's counsel confirmed the District Court's previous denial of Correa's suppression motion and agreed to incorporate the prior record into the new indictment.

On January 20, 2010, after a bench trial, the District Court convicted Correa on the felon-in-possession-of-a-firearm charge.  On April 21, 2010, the District Court sentenced Correa to 100 months' imprisonment followed by three years' supervised release.  Correa timely appealed on April 22, 2010.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.  "We review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (quotation marks omitted).  The proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978); *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010).

## III.

---

[2]  The indictment was dismissed without prejudice.  Correa does not dispute the District Court's dismissal without prejudice.  Correa Br. 1 n.1.

5

A defendant must have standing to invoke the Fourth Amendment's exclusionary rule. *Stearn*, 597 F.3d at 551; *see also Minnesota v. Olson*, 495 U.S. 91, 95 (1990) ("[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." (quotation marks omitted)). "Fourth Amendment standing requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *Kennedy*, 638 F.3d at 163 (quotation marks omitted); *see Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Regarding the objective prong, "we inquire whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Bond v. United States*, 529 U.S. 334, 338 (2000) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Regarding the subjective prong, "we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'" *Id*. With these concepts in mind, we now turn to the case before us.

Correa argues that the Task Force violated his Fourth Amendment rights by unlawfully entering the common areas of a locked, multi-unit apartment building and seizing him. Thus, according to Correa, his firearm and statements must be suppressed as fruit of an unlawful seizure. We disagree.

Correa did not have Fourth Amendment standing to challenge this search because he lacked an objectively reasonable expectation of privacy in the common areas of a

6

multi-unit apartment building with a locked exterior door.[3] In *Acosta*, we held that a resident of a multi-unit apartment complex lacks an objectively reasonable expectation of privacy in the common areas of the multi-unit apartment complex, at least where the exterior door is *unlocked*. 965 F.2d at 1253. We now extend *Acosta* and join a number of other Circuit Courts of Appeals in holding that a resident lacks an objectively reasonable expectation of privacy in the common areas of a multi-unit apartment building with a locked exterior door. *United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993); *United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991); *United States v. Barrios-Moriera*, 872 F.2d 12, 14-15 (2d Cir. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 130 (1990); *United States v. Eisler*, 567 F.2d 814, 816 (8th Cir. 1977); *see also United States v. Miravalles*, 280 F.3d 1328, 1333 (11th Cir. 2002) (no reasonable expectation of privacy in common areas of high-rise apartment building where front door had an "undependable lock that was inoperable on the day in question").[4]

---

[3] As noted, to have Fourth Amendment standing, the proponent of a motion to suppress must prove he had *both* an objectively reasonable expectation of privacy *and* an actual, subjective expectation of privacy. Because we determine that Correa lacked an objectively reasonable expectation of privacy, we need not consider whether he proved a subjective expectation of privacy.

[4] The First Circuit has not yet addressed *locked* apartment buildings, but has held that "'a tenant lacks a reasonable expectation of privacy in the common

7

Moreover, we think Correa lacked a reasonable expectation of privacy in the building's common areas because he did not have control over these areas. After all, "[a]n expectation of privacy necessarily implies an expectation that one will be free of *any* intrusion, not merely unwarranted intrusions." *Eisler*, 567 F.2d at 816. Here, any resident in the multi-unit apartment building could admit guests, delivery people, repair workers, postal carriers, custodians, and others into the common areas of the apartment building. *See Miravalles*, 280 F.3d at 1332; *Nohara*, 3 F.3d at 1242. Additionally, the purpose of the locked front door was to "provide security to the occupants, not privacy in common hallways." *Id*. Finally, residents benefit from police protection in these common areas. *United States v. Holland*, 755 F.2d 253, 256 (2d Cir. 1985). Given the plethora of individuals who could access the common areas of the locked multi-unit apartment building and Correa's inability to control these areas, Correa "could not

> areas of an apartment building.'" *United States v. Rheault*, 561 F.3d 55, 59 (1st Cir. 2009) (quoting *United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998)).
>
> To our knowledge, the only Court of Appeals case holding that a resident has a reasonable expectation of privacy in the common areas of a locked apartment building is *United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976), but the Sixth Circuit has limited this outlier case. *See United States v. Dillard*, 438 F.3d 675, 683 (6th Cir. 2006) (recognizing that other circuits have "explicitly reject[ed]" *Carriger* and declining "to step further outside the mainstream" by extending *Carriger*).

8

have reasonably expected [his] privacy to extend beyond [his] apartment door." *Acosta*, 965 F.2d at 1252.

Finally, we reiterate that Fourth Amendment standing turns on legitimate expectations of privacy and not – as Correa argues – on concepts of property-law trespass. *See United States v. Cruz Pagan*, 537 F.2d 554, 558 (1st Cir. 1976) (finding no reasonable expectation of privacy in an apartment complex's common areas and noting that "[w]hether or not the agents' entry was a technical trespass is not the relevant inquiry"). Indeed, many places designated as "private" by the common law of property do not garner Fourth Amendment protection because they have been knowingly exposed to public view and lose a legitimate expectation of privacy. *See California v. Ciraolo*, 476 U.S. 207, 212-14 (1986) (curtilage observable from public airspace not entitled to Fourth Amendment protection); *United States v. Santana*, 427 U.S. 38, 42 (1976) (dwelling's threshold is "public"). Here, the common areas of the apartment building are similarly "public" spaces and not entitled to Fourth Amendment protection. Correa's argument that the Task Force violated his Fourth Amendment rights by trespassing in the common areas of the locked, multi-unit apartment building misses the mark. The relevant question is whether Correa had an objectively reasonable expectation of privacy in the common areas. For the reasons discussed, he did not. Therefore, no Fourth Amendment violation occurred, and we will affirm.

9

We have considered Correa's other arguments and find them unavailing.[5]

## IV.

We conclude that a resident lacks an objectively reasonable expectation of privacy in the common areas of a locked, multi-unit apartment building. Therefore, we will affirm the District Court's denial of Correa's suppression motion. We also affirm Correa's conviction and sentence.

---

[5] Correa contends that the Task Force violated his Fourth Amendment rights under *Payton v. New York*, 445 U.S. 573 (1980), and *Steagald v. United States*, 451 U.S. 204 (1981). However, neither *Payton* nor *Steagald* applies to this case. As we said in *United States v. Veal*, "*Payton* requires that officers have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." 453 F.3d 164, 167 (3d Cir. 2006) (quotation marks omitted). But here, the Task Force entered the common areas of a locked, multi-unit apartment building, not a residence. Similarly, *Steagald* holds that, absent exigent circumstances, law enforcement officers with an arrest warrant may not enter a third party's home to search for the subject of the arrest warrant. 451 U.S. at 213-14. But the Task Force entered the common areas of an apartment building, not a home.