HARDIMAN, Circuit Judge,
dissenting.
The majority reverses the District Court’s decision to deny Alexander Nave-do’s motion to suppress evidence after finding that Newark police officers Saul DeLaCruz and Henry Suarez (the Officers) did not possess reasonable suspicion to believe Navedo was about to engage in criminal activity. My disagreement with that finding necessitates this respectful dissent.
I
A
Reasonable suspicion requires “a particularized and objective basis for suspecting the person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). While officers may not rely on an “inchoate ... suspicion or hunch,” Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it is well-established that they may “draw on their own experience and *475 specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person,’ ” United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting Cortez, 449 U.S. at 417-18, 101 S.Ct. 690). Accordingly, reasonable suspicion does not require evidence of a crime and need not be based on purely nefarious conduct. “[E]ven factors independently ‘susceptible to innocent explanation’ can collectively amount to reasonable suspicion.” United States v. Brown, 448 F.3d 239, 252 (3d Cir.2006) (quoting Arvizu, 534 U.S. at 273, 122 S.Ct. 744).
My colleagues conclude that the Officers’ pre-flight observations could not reasonably have led them to suspect that Navedo was about to engage in criminal activity. They do so in spite of their concession that the Officers had reasonable suspicion as to another party to the encounter, Juan Pozo. {See Maj. Typescript at 8, 9-10.) In doing so, the majority fails to acknowledge critical portions of the Officers’ testimony and usurps the factfinding province of the District Court.
According to the Officers, both of whom were deemed credible by the District Court, around 8:30 p.m., they noticed Navedo exit 315 Park Avenue and stand at the top of the stairs to his porch. Officer Suarez testified that drug purchasers often wait for deliveries outside their homes in this manner. Moments later, Pozo and another man approached Navedo and spoke to him for several minutes; the interaction appeared “cordial” and “friendly.” Pozo then opened a backpack and began to withdraw what “appeared [to both Officers] to be a gun” and a holster. (JA 36, 64, 88.) Navedo never touched the gun, but he “lean[ed] forward to see what was inside the bag” and looked unsurprised to see the gun. (JA 51-52, 67, 89.) Conceding that Navedo “had not engaged in any illegal activity, per se” at that point, (JA 46-47), “the way [Pozo and Navedo] were both speaking to each other, the way the weapon was taken out of the backpack being shown, ... [and] the interest [Nave-do] showed towards the weapon” led Officer DeLaCruz to believe that “a gun transaction was going to transpire,” (JA 88-89). The District Court explicitly credited De-LaCruz’s testimony that he saw Navedo “being shown the gun in what appeared to be a gun transaction.” (JA 140-41.)
I find nothing in the record that would permit us to overturn the District Court’s finding that the Officers suspected Pozo and Navedo were about to engage in a gun transaction. Nor can I conclude that it was unreasonable for them to infer that such a gun sale was likely criminal under New Jersey law. In New Jersey, “[n]o person shall ... receive, purchase, or otherwise acquire a handgun unless [he] ... is licensed as a dealer ... or has first secured a permit to purchase a handgun.” N.J. Stat. Ann. § 2C:58-3(a). Crucially, when the legality of a gun transaction, or even mere possession, “depends on ... a license or permití,]” New Jersey law “presume[s] that [the individual involved] does not possess such a license or permit ... until he establishes to the contrary.” Id. § 2C:39-2(b). Therefore, the Officers’ suspicion that Pozo’s and Navedo’s actions denoted illegal enterprise was reasonable.[1]
*476 B
After concluding that no reasonable suspicion existed as to Navedo, the majority devotes a substantial portion of its opinion to explaining that Navedo’s flight could not, by itself, establish probable cause to arrest him. (See Maj. Typescript at 16-20.) This is undoubtedly correct. See Illinois v. Wardlow, 528 U.S. 119, 124-26, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (indicating that flight alone is insufficient to satisfy the lesser standard of reasonable suspicion); accord United States v. Bonner, 363 F.3d 213, 217 (3d Cir.2004) (“[T]he Supreme Court has never held that unprovoked flight alone is enough to justify a stop.”). But because the Officers did have reasonable suspicion before Navedo fled, this case turns on whether Navedo’s flight in addition to the facts known to the Officers when they approached the porch rose to the level of probable cause. See United States v. Laville, 480 F.3d 187, 195 (3d Cir.2007); cf. Wardlow, 528 U.S. at 124, 120 S.Ct. 673 (holding that flight combined with other suspicious circumstances can create reasonable suspicion). I believe our decision in Laville governs our analysis of whether the Officers had probable cause to arrest Navedo.
In Laville, an eyewitness on a wharf in the Virgin Islands had reported to police that a boat had run aground and illegal aliens were coming ashore. 480 F.3d at 189. When police responded to the scene, the witness was able to point out four of the recently arrived individuals sitting on a nearby boardwalk. Id. Those individuals informed police that they were Cuban and that other aliens who had arrived on the beach with them were still in the area. Id. The eyewitness offered to identify several of the aliens he claimed were around a corner from the boardwalk. Id. When police approached three men the eyewitness had identified, the men “stood up and started walking away really fast.” Id. at 190. Soon after, the men began running. Id. When Laville, one of the fleeing suspects, yielded to an officer yelling at him to stop, he was arrested. Id. In reviewing the constitutionality of Laville’s arrest, we concluded that “by the time [the officer] approached Laville and his companions on the boardwalk, he had, at the very least, reasonable suspicion to believe that criminal activity was afoot.” Id. at 195. It followed that “when Laville fled at the sight of the approaching officers, [they] no longer merely had reasonable suspicion *477 ...; [they] now had probable cause to make an arrest.” Id. We explained that “ “where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest.’ ”[2] Id. (emphasis added) (quoting United States v. Sharpe, 470 U.S. 675, 705, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (Brennan, J., dissenting)).
I agree with the majority that whether reasonable suspicion escalates to probable cause when a suspect flees police is context-dependent and must be determined on a case-by-case basis. In the Supreme Court’s words, “deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.” Sibron v. New York, 392 U.S. 40, 66-67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (emphasis added); accord United States v. Cruz, 910 F.2d 1072, 1077 (3d Cir.1990). “Headlong flight— wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.” Wardlow, 528 U.S. at 124, 120 S.Ct. 673.
I also agree that suspects may at times run from police for innocent reasons. For example, where the investigating officer “insufficiently or unclearly identifies his office or his mission,” “the [suspect’s] flight ... must be regarded as ambiguous conduct.” Wong Sun v. United States, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). But that is not what occurred in this case. Here, although the Officers were dressed in plain clothes, they displayed their badges and verbally identified themselves as Newark police officers. Accordingly, the Officers could reasonably interpret Navedo’s immediate flight as evidence of a guilty conscience.
As in Laville, the Officers here had information suggesting the possibility of a crime in progress before they approached the suspects. The conduct underlying their suspicions was not itself per se illegal, but their professional experience suggested that criminal activity was afoot. The Officers saw Navedo waiting on his front porch, where he appeared to be expecting someone. They deemed this behavior consistent with narcotics sales protocols based on their law enforcement expertise. They observed Pozo’s arrival with a backpack, the ensuing conversation, Pozo’s display of what appeared to be a gun, and Navedo’s expression of interest in the gun. Instead of receiving information from an eyewitness as did the police in Laville, here the Officers personally observed facts that led them to possess reasonable suspicion that criminal activity was afoot. The majority attempts to distinguish Laville by analogizing the arrest there to “a border search that requires far less justification.” (Maj. Typescript at 19.) But the word “border” does not even appear in our opinion in Laville. There we applied the usual probable-cause standard and concluded that it had been satisfied. 480 F.3d at 194-95. Probable cause has likewise been established in this case.
*478 After concluding that the Officers’ reasonable suspicion became probable cause when Navedo fled, thé question becomes whether the Officers were authorized to pursue Navedo into 315 Park Avenue. I would hold that the Officers’ “hot pursuit” of Navedo into his apartment building constituted a valid exigent circumstance that permitted them to disregard the warrant requirement.[3] See, e.g., Kentucky v. King, — U.S. -, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011); United States v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (holding that where probable cause to arrest exists, “a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper ..., by the expedient of escaping to a private place”). “Hot pursuit” need not involve “an extended hue and cry ‘in and about (the) public streets.’ ” Santana, 427 U.S. at 42-43, 96 S.Ct. 2406. “The fact that [a] pursuit ... end[s] almost as soon as it beg[ins]” because a suspect flees into and is apprehended just inside his own home does not “render it any the less a ‘hot pursuit’ sufficient to justify the warrantless entry.” Id. at 43, 96 S.Ct. 2406. It matters not that Navedo had only to take a few steps before he was inside his building or that he was tackled and arrested just moments into the chase. Officers suspected him of an illegal gun transaction and knew of at least one gun on the scene, which justified immediate action. See Welsh v. Wisconsin, 466 U.S. 740, 751, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); United States v. Ball, 90 F.3d 260, 263 (8th Cir.1996).
The two requisites for a warrantless arrest in the home — probable cause and exigent circumstances — were established by the Government in this case. See Welsh, 466 U.S. at 749-50, 104 S.Ct. 2091; Payton v. New York, 445 U.S. 573, 586-90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Couden v. Duffy, 446 F.3d 483, 496 (3d Cir.2006). And because the firearms evidence Navedo sought to suppress was in plain view from the Officers’ lawful vantage point the instant they tackled Navedo, it was admissible.
II
For the foregoing reasons, I would uphold the District Court’s denial of Nave-do’s suppression motion and affirm the judgment of conviction.

. That reasonable suspicion existed does not mean the Officers required such suspicion at the time they approached Navedo's porch. "A seizure does not occur every time a police officer approaches someone to ask a few questions. Such consensual encounters are important tools of law enforcement and need not be based on any suspicion of wrongdoing.” Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir.2003); accord United States v. *476 Drayton, 536 U.S. 194, 204-05, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002); Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Officers may "pose questions, ask for identification, and request consent to search luggage — provided they do not induce cooperation by coercive means”— without effecting a seizure. Drayton, 536 U.S. at 201, 122 S.Ct. 2105. Confronted with a so-called "consensual encounter,” an individual may " ‘decline to listen to the questions at all and ... go on his way.' " United States v. Bonner, 363 F.3d 213, 217-18 (3d Cir.2004) (quoting Royer, 460 U.S. at 498, 103 S.Ct. 1319). Reasonable suspicion is required only when officers conduct an investigatory stop pursuant to Terry, 392 U.S. 1, 88 S.Ct. 1868. See, e.g., Cortez, 449 U.S. at 417-18, 101 S.Ct. 690.
Here, the Officers initiated a consensual encounter, and Navedo did not merely decline to participate. See, e.g., Royer, 460 U.S. at 497-98, 103 S.Ct. 1319. Nor did Navedo submit to subsequent displays of the Officers’ authority and stop to be questioned pursuant to Terry. Accordingly, under California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), no seizure occurred until he was tackled in the doorway to his room. Thus, the Officers’ reasonable suspicion is relevant only insofar as it informs our probable-cause analysis; reasonable suspicion was neither necessary to the Officers’ pre-flight actions nor sufficient to render Navedo's ultimate seizure and arrest constitutional.

. Other circuits have likewise concluded that reasonable suspicion may escalate to probable cause upon the suspect's flight from police. See Weaver v. Shadoan, 340 F.3d 398 (6th Cir.2003); United States v. Dotson, 49 F.3d 227 (6th Cir. 1995); United States v. Morgan, 936 F.2d 1561 (10th Cir.1991); United States v. Martinez-Gonzalez, 686 F.2d 93 (2d Cir. 1982).

. Due to the nature of Navedo's apartment building, whether he possessed a reasonable expectation of privacy — a necessary predicate to his invocation of the exclusionary rule— might have presented a close question in this case. See United States v. Correa, 653 F.3d 187, 188-90 (3d Cir.2011) ("[A] resident of [a] ... multi-unit apartment building lacks an objectively reasonable expectation of privacy in the building’s common areas” even where there is a "locked exterior door.”). But the Government waived this standing argument by failing to raise it in the District Court. E.g., United States v. Dupree, 617 F.3d 724, 728 (3d Cir.2010) (It is "well-established ... that arguments not raised in the district courts are waived on appeal ... [and] [t]his general principle applies fully to criminal cases involving motions to suppress.”); United States v. Stearn, 597 F.3d 540, 552 n. 11 (3d Cir.2010) (Standing is "subject to the ordinary rule that an argument not raised in the district court is waived on appeal.”).