**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4208
_____

UNITED STATES OF AMERICA

v.

GARY WOOD,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-11-cr-00547-001)
District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit LAR 34.1(a)
September 26, 2013
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: October 3, 2013)
_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

Gary Wood appeals the District Court's order denying his motion to suppress the

firearm that Philadelphia police officers found on him when they were dispatched to his

home in response to reports of a woman being held inside against her will. We will affirm.

## I.

As we write primarily for the parties, we recount only the essential facts and procedural history. On November 14, 2009, at around 1 a.m., Officer Robert DeBellis was dispatched to Wood's residence based on a 911 call reporting that a woman was being held inside against her will and was being injured.[1] Officer DeBellis arrived outside of Wood's residence and encountered a woman who told him that her friend was inside the residence "in distress, in fear for her life, and . . . being held against her will." App. 121-22. Officers David Dawson and David Brown, who also heard the dispatch, joined Officer DeBellis at the residence.

The door to the enclosed porch of the residence was locked. The landlord arrived and unlocked the porch door. The porch area led to two doors: one to the ground-floor apartment and the other to Wood's second-floor apartment. The officers knocked on one door, and a resident appeared who directed them to Wood's door. The officers then knocked on Wood's door "for a certain period of time."[2]

---

[1] The 911 operator reported that someone was screaming in the background of the call. While no testimony was elicited concerning this fact, an exhibit setting forth this fact was offered by stipulation at the suppression hearing.

[2] At this point, according to Officer DeBellis, a woman ran out of Wood's apartment "like she was being chased by the devil." App. 122-23. Officer Dawson, who arrived at the scene after Officer DeBellis, testified, however, that he did not recall the woman fleeing the apartment, but that he did encounter a woman upstairs in the kitchen. The District Court disregarded Officer DeBellis's recollection of the woman fleeing the apartment in light of the conflict, but noted that it found the rest of DeBellis's testimony credible and that whether the woman fled the apartment was not material to its decision.

Wood eventually appeared at the door and entered the porch. The District Court made no finding as to whether Wood remained on the porch, reentered the doorway of the apartment, or moved between these areas during the encounter with the police. After the officers asked Wood a few questions, Wood "abruptly" told the officers that he had a child upstairs in the apartment to care for and turned to leave. App. 123-24. As he turned, Officer DeBellis grabbed Wood's shoulder and, as he did so, saw that a gun was tucked in the back of Wood's pants. Wood turned back to the officers and shoved Officer DeBellis, at which point the officers subdued Wood and placed him under arrest.

A grand jury returned an indictment charging Wood with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Wood filed a motion to suppress the gun, which he contends was the fruit of an illegal seizure that occurred either at the time the officers brought him to the door of the apartment, or, at the latest, when Officer DeBellis grabbed his shoulder. The District Court denied the motion. Wood entered a conditional guilty plea pursuant to an agreement that permitted him to appeal the decision denying the motion to suppress. Wood appealed.

**II.**

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's order denying a motion to suppress for clear error as to its factual findings and exercise plenary review of its application of the law to those facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). We have held that "[t]he presence of exigent

3

circumstances is a finding of fact, which we review for clear error." United States v. Coles, 437 F.3d 361, 366 (3d Cir. 2006).

**III.**

**A.**

Wood first argues that the factual findings supporting the District Court's decision are clearly erroneous. Wood attempts to cast doubt on these findings by drawing our attention to inconsistencies between the officers' descriptions of the events leading up to the seizure, such as the fact that only one officer stated that he saw a woman fleeing the apartment and only one officer stated that he heard noises emanating from the apartment. Clear error review is deferential, however, and in instances "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985); see also id. at 575 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."); United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir. 1997) (holding that review of factual findings "is more deferential with respect to determinations about the credibility of witnesses") (citing Anderson, 470 U.S. at 575).

Wood has not demonstrated that the District Court's factual findings are implausible, incoherent, or inconsistent with the objective evidence, and therefore has not shown that they are clearly erroneous. The difference in the officers' testimony concerning whether they heard any noise coming from inside the apartment is a minor

inconsistency and does not render the remainder of the District Court's findings implausible or incoherent.

Even setting aside the subjects about which the testimony varied, as the District Court did, the facts on which the officers agreed were sufficient to support a finding of exigent circumstances. Those facts include the radio dispatch to the officers informing them that a woman was being detained at Wood's address, and a separate report from a woman outside Wood's home who told the officers that she had received text messages from a friend who was inside the home and who indicated she was "in distress, in fear of her life, and [was] being held against her will." App. 122. The reports of someone being held against her will and fearing for her life inside the residence were sufficient to establish the likelihood of immediate and ongoing violence and justified the officers' decision to detain Wood. See United States v. Myers, 308 F.3d 251, 264 (3d Cir. 2002) (officer's entry into home to investigate was justified in light of 911 call indicating a domestic disturbance and officer's conversation with a girl outside the residence who reported that defendant was acting violently and had a gun). Because these facts demonstrate a coherent, plausible description of what the officers observed and heard regarding a report of a woman being held in Wood's apartment, the District Court's conclusion that exigent circumstances existed is amply supported and not clear error.[3]

**B.**

---

[3] Wood also argues that the record does not sufficiently demonstrate exigency, and that there must be a showing of immediate and ongoing violence or harm to enter. Certainly, if there were more evidence that someone was being held inside and feared for her life, that would bolster the finding of exigency, but that does not mean that the District Court's conclusion of exigent circumstances was clearly erroneous on these facts.

5

We next turn to the de novo application of law to those facts. At issue is whether the police officers violated Wood's rights by seizing him. This requires us to determine first whether Wood was seized and second whether the seizure was lawful.

As to whether there was a seizure, Wood would be deemed "'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (circumstances indicating seizure include "the threatening presence of several officers, . . . some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). A reasonable person would have understood that Wood was not permitted to leave—and therefore was seized—when Officer DeBellis grabbed him by the shoulder.

A reasonable person would also conclude, however, that it was appropriate for Officer DeBellis to seize Wood either on the porch or in the doorway of his premises, particularly since the porch is a common area, and the officers could have entered Wood's home given the exigent circumstances. While a search of a home generally requires a warrant, see, e.g., Payton v. New York, 445 U.S. 573, 586 (1980), there are exceptions to the warrant requirement, see Illinois v. McArthur, 531 U.S. 326, 331 (2001) (collecting cases and listing exceptions to the warrant requirement, including exigent circumstances). Among those exceptions is the need to protect an individual from imminent harm. See Brigham City v. Stuart, 547 U.S. 398, 403 (2006) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously

6

injured or threatened with such injury.") (citing Mincey v. Arizona, 437 U.S. 385, 392 (1978)); Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996) (holding that exigent circumstances exist where "officers reasonably . . . believe that someone is in imminent danger.") (emphasis omitted); cf. Georgia v. Randolph, 547 U.S. 103, 118 (2006) (stating that no question could reasonably be raised "about the authority of the police to enter a dwelling to protect a resident from domestic violence").  If the officers have probable cause to believe an individual in the home is in imminent danger, they may enter it without a warrant.  Parkhurst, 77 F.3d at 711.

Here, the officers had an objectively reasonable basis to believe that an individual inside the home was in danger.  They were notified of a 911 call that reported a woman being held against her will.  Upon their arrival at the home, a witness told them that she had received text messages from the woman inside the home, who was in fear for her life and was being held against her will.  Those facts, when taken together, provided a reasonable basis to believe exigent circumstances required the search of the home without a warrant.  The officers were therefore authorized to enter the home to search for a victim or to determine whether there was an ongoing threat of imminent harm.[4]  Brigham City, 547 U.S. at 403; see also Randolph, 547 U.S. at 118; Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006).

---

[4] Wood also contends that the officers needed to investigate further before making a warrantless entry into the apartment.  This is precisely what the officers were attempting to accomplish by asking Wood questions at the door before entering into his home.

On these facts, the officers had both the authority to enter the entire home, as well as engage in the less intrusive act of detaining Wood at or near the doorway to further investigate.[5] McArthur, 531 U.S. at 335; see also Brigham, 547 U.S. at 403 (officers may enter premises without a warrant to protect occupant from injury); Myers, 308 F.3d at 266 (911 call and similar report outside the home from adolescent that her mother and boyfriend were fighting and that the boyfriend had a gun "created sufficient exigency to allow [a police officer] to enter her home to investigate"). Under these circumstances, detaining Wood at or near his doorway and asking him questions was an appropriate method to determine whether a full search was necessary. The brief seizure allowed the officers to avoid the more intrusive—and, in light of the exigent circumstances, entirely permissible—search of the house. In short, Wood's detention was reasonable. See

---

[5] The Supreme Court's decision in McArthur supports this conclusion. There, officers were called to the defendant's home to keep the peace as his wife removed her belongings. Id. at 328-29. When she finished, the wife informed the officers that the defendant had drugs in the home. Id. at 329. The officers knocked on the defendant's door, told him what his wife had said, and asked for permission to search the home, which the defendant denied. Id. The officers then required the defendant to remain outside the home while they applied for a search warrant so that he could not destroy the evidence. Id. Two hours later, the officers received the search warrant, searched the home, and found marijuana and drug paraphernalia. Id. The defendant moved to suppress the results of the search, contending that the warrantless seizure was per se unreasonable. Id. The Supreme Court observed that, in light of the exigent circumstances, the defendant's warrantless detention was a Fourth Amendment seizure but was not per se unreasonable. Id. at 331. The Supreme Court balanced "the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." Id. The Supreme Court concluded that it was reasonable because the officers had probable cause to believe contraband was in the home, they had good reason to fear the drugs would be destroyed if they did not detain the defendant, they reconciled their law enforcement needs with the defendant's privacy by "impos[ing] a significantly less restrictive restraint" than searching the home or arresting the defendant, and the restraint was imposed for only two hours. Id. at 331-32.

McArthur, 531 U.S. at 336 ("Temporarily keeping a person from entering his home, a consequence whenever police stop a person on the street, is considerably less intrusive than police entry into the home itself in order to make a warrantless arrest or conduct a search.") (citing Payton, 445 U.S. at 585).

Wood also contends that the seizure was inappropriate because he was effectively seized inside his home when the officers knocked on his door.[6] The District Court did not decide whether Wood was in a common area, United States v. Correa, 653 F.3d 187, 190-91 (3d Cir. 2011) (holding that there is no reasonable expectation of privacy in locked common areas of apartment buildings), or inside his apartment when Officer DeBellis seized him. App. 123 ("He at some point may have entered the area of the porch . . . ."). The location of the seizure is not dispositive here because, as we explained, the officers would have been justified in entering and searching the home. Cf. McArthur, 531 U.S. at 335 (rejecting the conclusion that it was improper to restrain the defendant outside of his residence after encountering him on the porch, which the lower court described as "a constructive eviction") (quotation marks omitted); Michigan v.

---

[6] Wood relies on two cases in which other circuit courts have held, on very different facts, that individuals were seized inside their homes when police officers knocked on the individuals' doors. See United States v. Reeves, 524 F.3d 1161, 1170 (10th Cir. 2008) (observing that the government had "pointed to no evidence that could support exigency at the time [the defendant] was seized"); United States v. Saari, 272 F.3d 804, 810 (6th Cir. 2001) (noting that, when the police officers knocked on the door, "there was no proof that anyone was being threatened inside"). We need not decide under what circumstances, if any, an individual who answers the door would be deemed seized.

Summers, 452 U.S. 692, 704-05 (1981) (officers may detain an individual inside a residence during a search of the residence).[7]

## IV.

For the foregoing reasons, we will affirm.

---

[7] Because the government has shown that there were exigent circumstances and probable cause would have justified the officers' entry into the home, see, e.g., Alabama v. White, 496 U.S. 325, 330-31 (1990) (describing the difference between the type and quantity of evidence required to establish reasonable suspicion and probable cause), we need not decide whether the encounter with Wood at the doorway of his home was also permissible under Terry v. Ohio, 392 U.S. 1, 30 (1968) (reasonable suspicion standard governs an investigatory stop and search).