**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2266
_____

UNITED STATES OF AMERICA

v.

ANTOINE CORTEZ-DUTRIEVILLE,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA
(D.C. No. 2-12-cr-00183-001)
District Judge: Hon. Terrence F. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
February 11, 2014
_____

Before: CHAGARES, SHWARTZ, and ALDISERT, <u>Circuit
Judges</u>.

(Filed: February 26, 2014)

Lisa B. Freeland, Esq.
Renee Pietropaolo, Esq.
Office of the Federal Public Defender
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

   Counsel for Appellant

David J. Hickton, Esq.
Michael Leo Ivory, Esq.
Rebecca R. Haywood, Esq.
United States Attorney's Office
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

   Counsel for Appellee

_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

Antoine Cortez-Dutrieville ("Dutrieville") appeals the denial of his motion to suppress evidence seized from the home of the mother of his child. The District Court denied the motion, holding that Dutrieville was prohibited from entering the home as a result of a protection order and thus lacked standing to challenge the search. We will affirm.

I

On June 8, 2012, United States Customs and Border Protection officers at John F. Kennedy International Airport intercepted a UPS package containing heroin. The mailing address handwritten on the package was "Mrs. APARNA BEENA, NO. 18 Walnut St. Union Town PA 15401." App. 210. The electronic manifest indicated that the address was "59 Millview Dr. Uniontown, PA 15401." App. 211-12. When the handwritten address and the electronic address conflict, UPS delivers the package to the electronic address.

Law enforcement agents repackaged the heroin in a new box. The new box listed the Millview address instead of the Walnut address and contained a beeper that would indicate when the package was opened. On this information, the agents obtained an anticipatory search warrant for the Millview address, the residence of Portia Newell, the mother of Dutrieville's child. The warrant extended to the contents of the package and a list of materials commonly associated with drug trafficking. The search warrant was to be executed once the package was accepted and taken inside the home.

On June 13, 2012, an undercover agent delivered the package to Dutrieville. Two minutes later the beeper activated. Agents approached the home, announced their presence, and, after receiving no response, entered the home. They took Dutrieville into custody and searched the home.

In the rear bedroom, agents found the heroin underneath a blanket. In the master bedroom, they found the empty package, the beeper, Dutrieville's cell phone, and Dutrieville's overnight bag, which contained personal items

3

and 45 unused stamp bags (which are often used to package heroin). The agents also found digital scales and other drug paraphernalia in the living room.

Dutrieville eventually admitted that he had been staying at the home with Newell's consent for three days. The District Court found that Dutrieville brought his overnight bag with him at the inception of his stay. He also admitted that he was the subject of a Protection From Abuse Order (the "protection order"), which provided, among other things, that: (1) Dutrieville was not to contact Newell except to make child custody arrangements; (2) Dutrieville was "completely evicted and excluded from" Newell's residence; (3) Dutrieville had "no right or privilege to enter or be present on the premises of [Newell]"; (4) the protection order would remain in effect until October 7, 2013; (5) Newell's consent could not override the express terms of the order; and (6) Dutrieville could be arrested without a warrant for violating the terms of the order. App. 194-96.

Dutrieville was charged with one count of attempted possession with intent to distribute 100 grams or more of a mixture or a substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(a)(1).

Dutrieville filed a motion to suppress the evidence obtained during the search, arguing that the anticipatory search warrant was not supported by probable cause. Specifically, he argued that the agents manufactured probable cause by changing the address on the label from the Walnut address to the Millview address. The District Court held that Dutrieville did not have Fourth Amendment standing to bring this challenge since he was subject to a protection order that

4

barred him from the home, and thus he lacked a legitimate expectation of privacy in both the home and the overnight bag. Dutrieville entered a conditional guilty plea which allowed him to file an appeal of the suppression ruling. On appeal, he asserts that he has Fourth Amendment standing and that this Court should remand the case to the District Court for consideration of his probable cause argument.

II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a District Court's denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review of the application of the law to the facts. United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005). Dutrieville bears the burden of establishing a violation of his Fourth Amendment rights. United States v. Stearn, 597 F.3d 540, 551 (3d Cir. 2010).

III

"A defendant must have standing to invoke the Fourth Amendment's exclusionary rule." United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011). A defendant has standing if he can establish that he had a legitimate expectation of privacy in the invaded place. Id.; see also United States v. Mosley, 454 F.3d 249, 253 n.5 (3d Cir. 2006) ("The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated."). An individual's expectation of privacy is legitimate if: (1) the individual demonstrated a subjective expectation of privacy in the

5

subject of the search and (2) this expectation of privacy is objectively reasonable. See United States v. Kennedy, 638 F.3d 159, 163 (3d Cir. 2011). The subjective prong requires a court to determine whether the defendant, "by his conduct, has exhibited an actual expectation of privacy." Bond v. United States, 529 U.S. 334, 338 (2000) (citation omitted). The objective prong requires a court to determine whether the defendant's "expectation of privacy is 'one that society is prepared to recognize as reasonable.'" Correa, 653 F.3d at 190 (quoting Bond, 529 U.S. at 338).

The question here is whether Dutrieville had an objectively reasonable expectation of privacy in the home and his overnight bag.[1]

A

Dutrieville argues that he had an objectively reasonable expectation of privacy in the home since he was an overnight guest staying at the home with Newell's consent. Generally, a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." Minnesota v. Olson, 495 U.S. 91, 96-97 (1990). This is because a guest typically "seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." Id. at 99. Moreover,

---

[1] Because Dutrieville lacked an objectively reasonable expectation of privacy in both the home and the bag, we need not consider the subjective prong. Correa, 653 F.3d at 190 n.3.

6

"hosts will more likely than not respect the privacy interests of their guests." Id. Accordingly, acknowledging "that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share." Id. at 98.

Though most overnight guests have an objectively reasonable expectation of privacy, Dutrieville was not like most overnight guests. The key distinction is that the protection order prohibited Dutrieville from entering the home and from having any contact with Newell. Pursuant to Pennsylvania law, Dutrieville's mere presence in the home violated the order and exposed him to criminal liability. See 23 Pa. Cons. Stat. § 6114(a).[2] Importantly, Newell's consent could not override the terms of the protection order. Consequently, like a trespasser,[3] a squatter,[4] or any individual

---

[2] As Dutrieville notes, Pennsylvania courts have held that a de minimis violation of a protection order may not be sufficient to support a conviction for criminal contempt. See Commonwealth v. Haigh, 874 A.2d 1174, 1177-78 (Pa. Super. Ct. 2005). Here, Dutrieville admitted that he had been staying in the home for three days in violation of the order. This level of violation exceeds the level that Pennsylvania courts have found to be de minimis. See id. (holding that a defendant's violation was de minimis when he briefly asked his wife about a health problem during a court proceeding).

[3] United States v. Struckman, 603 F.3d 731, 747 (9th Cir. 2010) (noting that trespassers lack Fourth Amendment standing).

[4] Amezquita v. Hernandez-Colon, 518 F.2d 8, 11 (1st Cir. 1975) (holding that squatters on government land lack Fourth Amendment standing).

who "occup[ies] a piece of property unlawfully,"[5] Dutrieville's presence in the home was "wrongful," and therefore any expectation of privacy he may have had was not one that society is prepared to recognize as reasonable. See Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978).[6]

B

Dutrieville also argues that, even if he lacked a legitimate expectation of privacy in the home, he had one in his overnight bag. First, according to Dutrieville, the protection order did not extend to any of his belongings, and, therefore, while his presence in the home may have been unlawful despite Newell's consent, his bag's presence was not. Second, he attempts to analogize his case to cases holding that an individual retains a legitimate expectation of privacy in bags kept with a third party. See, e.g., United States v. Waller, 426 F.3d 838, 844-45 (6th Cir. 2005) (holding that defendant had a legitimate expectation of privacy in luggage stored at friend's residence); United States v. Salinas-Cano, 959 F.2d 861, 864 (10th Cir. 1992) (noting that overnight bags "historically command a high degree of privacy"); United States v. Most, 876 F.2d 191, 197-98 (D.C.

---

[5] United States v. Curlin, 638 F.3d 562, 565 (7th Cir. 2011) (collecting cases).

[6] Our holding is consistent with the holdings of other courts to address the Fourth Amendment rights of an individual violating a protection order. See Washington v. St. Albans Police Dep't, 30 F. Supp. 2d 455, 457-58 (D. Vt. 1998); Commonwealth v. Morrison, 710 N.E.2d 584, 586 (Mass. 1999); State v. Stephenson, 760 N.W.2d 22, 26-27 (Minn. Ct. App. 2009).

Cir. 1989) (holding that defendant had a legitimate expectation of privacy in a bag entrusted to store clerks).

These arguments are unavailing. The standing question turns on whether his expectation of privacy was objectively reasonable. Correa, 653 F.3d at 190. Because Dutrieville's mere presence in the home was unlawful, it follows that he lacked an objectively reasonable expectation of privacy in a bag that he brought with him during an unlawful visit. This is because a person legally prohibited from entering a particular place cannot reasonably expect to use that place as a "private repository for his personal effects." United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) (internal quotation marks omitted). After all, if his personal effects are stored at the prohibited place, he cannot lawfully access them and therefore cannot reasonably expect that he will be able to exercise control over them or that they "will remain undisturbed." See United States v. Jackson, 585 F.2d 653, 658 (4th Cir. 1978) (noting that a trespasser on another's property or an individual on abandoned property lacks an objectively reasonable expectation of privacy in his personal effects stored there); see also United States v. Baker, 221 F.3d 438, 442 (3d Cir. 2000) (holding, in a case concerning a person's Fourth Amendment rights in a borrowed car, that standing depends on "the strength of [a person's] interest" in the searched property and "the nature of his control over it").

Unlike the cases he cites, Dutrieville asserts a privacy interest located in a place he is legally prohibited from entering. Dutrieville was prohibited from entering the home when he brought the bag and was also prohibited from accessing the bag while it was in the home. Accordingly, he

9

lacked an objectively reasonable expectation of privacy in the bag.

## IV

For these reasons, Dutrieville lacks standing to challenge the search of the home and his overnight bag. We will therefore affirm the District Court's order denying his motion to suppress.