**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 17-30055 |
| v. | D.C. No. 1:14-cr-00457-MC-1 |
| GERALD THOMAS SCHRAM, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted July 11, 2018
Portland, Oregon

Filed August 21, 2018

Before: Kim McLane Wardlaw and John B. Owens,
Circuit Judges, and Joan H. Lefkow,[*] District Judge.

Opinion by Judge Owens

---

[*] The Honorable Joan H. Lefkow, United States District Judge for
the Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming the district court's denial of a suppression motion, the panel held that a person who is prohibited from entering a residence by a court's no-contact order lacks a legitimate expectation of privacy in that residence and may not challenge its search on Fourth Amendment grounds.

The panel reversed the defendant's conviction in a concurrently filed memorandum disposition.

### COUNSEL

Brian C. Butler (argued), Assistant Federal Public Defender; Lisa Ma Research and Writing Attorney; Office of the Federal Public Defender, Medford, Oregon; for Defendant-Appellant.

Amy E. Potter (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney; United States Attorney's Office, Eugene, Oregon; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

OWENS, Circuit Judge:

Defendant-Appellant Gerald Schram appeals from the denial of his suppression motion.  The district court held that Schram could not challenge the search of a residence that a no-contact court order barred him from entering.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

## I.  FACTUAL BACKGROUND

On September 24, 2014, detectives from the Medford Police Department were called to investigate the robbery of a local U.S. Bank branch.[2]  After interviewing eyewitnesses and further police work, the detectives had probable cause to believe that Schram was responsible.  A records check showed, among other things, that there was a no-contact order prohibiting Schram from contacting his girlfriend, Zona Satterfield.

The detectives began their search for Schram at Satterfield's residence, as it was the only address the detectives had that was associated with him.  Without a warrant (and, for the purposes of this appeal, we assume without Satterfield's consent), the detectives entered the residence, found Schram inside, and arrested him.  They then obtained a search warrant and searched Satterfield's home.

---

[1] In a concurrently filed memorandum disposition, we reverse Schram's conviction for one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951.

[2] We rely primarily on the district court's factual findings, which neither party contests.

Schram was later indicted for bank robbery in violation of 18 U.S.C. § 2113(a), and he moved to suppress the evidence obtained in the search.  The district court denied the suppression motion, concluding that Schram could not "object to the entry into [Satterfield's] house" because "[h]e has no expectation of privacy in a residence that he is legally barred from entering."  Schram pled guilty, conditioned on his right to appeal the denial of his suppression motion.

This timely appeal followed.

## II.  STANDARD OF REVIEW

We review a district court's denial of a suppression motion de novo and its factual findings for clear error.  *See United States v. Cunag*, 386 F.3d 888, 893 (9th Cir. 2004).

## III.   DISCUSSION

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). But "[w]hether a warrant is required is a separate question from the one [we] address[] here, which is whether the person claiming a constitutional violation 'has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge.'" *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)).  A person may not claim his Fourth Amendment rights have been violated if that person lacks "a 'legitimate expectation of privacy in the premises' searched." *Id.* (quoting *Rakas*, 439 U.S. at 143).

Here, we must decide whether a person who is prohibited from entering a residence by a court's no-contact order still may have a legitimate expectation of privacy that would entitle him to Fourth Amendment protection in that residence. Supreme Court case law, our case law, and the law of other circuits make clear that the answer is no.

An individual has a "legitimate expectation of privacy" if: (1) the individual demonstrates a subjective expectation of privacy in the place being searched, and (2) this subjective expectation is one "that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988); *see also United States v. Struckman*, 603 F.3d 731, 746–47 (9th Cir. 2010). In *Rakas*, the Supreme Court clarified that a privacy interest is not reasonable when one's presence in a place is "wrongful." 439 U.S. at 143 n.12. (citation omitted). By way of example, the Court explained, "[a] burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy [in the cabin]," but lacks a legitimate expectation of privacy because "his expectation is not 'one that society is prepared to recognize as reasonable.'" *Id.* (quoting *Katz*, 389 U.S. at 361 (Harlan, J., concurring)).

Similarly, we have concluded that a defendant may not invoke the Fourth Amendment to challenge a search of land upon which he trespasses, calling this argument "frivolous." *United States v. Hernandez-Gonzalez*, 608 F.2d 1240, 1246 (9th Cir. 1979); *see also Struckman*, 603 F.3d at 747 ("Thus, had [the defendant] been an actual trespasser, he would not be able to claim the protections of the Fourth Amendment with regard to his arrest in the backyard."). We have also held that once a hotel takes affirmative steps to repossess a room that a patron procured "by criminal fraud and deceit," the patron lacks a legitimate expectation of privacy in the

room and so "does not enjoy the protection afforded by the Fourth Amendment." *Cunag*, 386 F.3d at 893–95.

Applying parallel reasoning, the Second Circuit has held that an escaped inmate may not claim a legitimate expectation of privacy in his automobile because the escapee is "no more than a trespasser on society." *United States v. Roy*, 734 F.2d 108, 110–12 (2d Cir. 1984); *see also United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) ("[A] mere trespasser has no Fourth Amendment protection in premises he occupies wrongfully."). Likewise, the First Circuit has concluded that squatters lack a legitimate expectation of privacy to challenge on Fourth Amendment grounds their eviction from government land. *Amezquita v. Hernandez-Colon*, 518 F.2d 8, 11–12 (1st Cir. 1975) (noting that the plaintiffs "knew they had no colorable claim to occupy the land" and that the commonwealth had twice asked them to depart voluntarily). And in holding that a defendant who fails to pay rent for a private residence may not challenge a search of that property, the Seventh Circuit clearly articulated the principle motivating this line of cases: "individuals who occupy a piece of property unlawfully have no claim under the Fourth Amendment." *United States v. Curlin*, 638 F.3d 562, 565–66 (7th Cir. 2011) (collecting cases).

The Third Circuit addressed the question directly before us and relied on these cases to conclude that, "like a trespasser, a squatter, or any individual who occup[ies] a piece of property unlawfully," an individual whose presence in a home is barred by a court no-contact order lacks "any expectation of privacy" in such place "that society is prepared to recognize as reasonable." *United States v. Cortez-Dutrieville*, 743 F.3d 881, 884–85 (3rd Cir. 2014) (alteration in original) (footnotes and citations omitted). In

so holding, the Third Circuit rejected the defendant's contention that the no-contact order was vitiated by the consent of the person whom the order barred the defendant from contacting.  *Id.* at 884.

Like the defendant in *Cortez-Dutrieville*, Schram argues that Satterfield's consent to his presence overrode the terms of the no-contact order.  He relies on *United States v. Gamez-Orduño*, 235 F.3d 453 (9th Cir. 2000), to argue that a property owner's invitation grants an individual a legitimate expectation of privacy on a premises, even if the individual is there for illegal purposes.  This principle sweeps far broader than the holding of *Gamez-Orduño*.  In that case, we held that narcotics smugglers had a legitimate expectation of privacy as overnight guests in a home.  *Id.* at 458–59.  But the narcotics smugglers' criminal conduct was not the act of being on the premises in question: their criminal conduct was narcotics smuggling.  Thus while a defendant does not lose his Fourth Amendment rights simply by engaging in illegal acts, a defendant still may lack Fourth Amendment rights to challenge the search of a residence when the law prevents him from being there in the first place.  *See United States v. Vega*, 221 F.3d 789, 797 (5th Cir. 2000) ("[T]he burglar's expectation of privacy loses its legitimacy not because of the wrongfulness of his activity, but because of the wrongfulness of his presence in the place where he purports to have an expectation of privacy."), *abrogated on other grounds, as recognized by United States v. Aguirre*, 664 F.3d 606, 611 n.13 (5th Cir. 2011).

Schram also argues that the Supreme Court's recent holding in *Byrd* cautions against drawing a per se rule in this case.  In *Byrd*, the Court held that a defendant who had not signed a rental car agreement may still have a legitimate privacy expectation in the rental car to challenge its search.

138 S. Ct. at 1529–30.  But in so holding, the Court explicitly left intact its conclusion from *Rakas* that a "car thief would not have a reasonable expectation of privacy in a stolen car," "[n]o matter the degree of possession and control."  *Id.* at 1529 (citing *Rakas*, 439 U.S. at 141 n.9).  To explain the difference between the defendant in *Byrd* and a car thief, the Court likened a car thief to *Rakas*'s hypothetical "burglar plying his trade in a summer cabin during the off season," thus reaffirming *Rakas*'s teaching that, like a defendant who may not challenge a search of stolen property, a defendant whose presence on a premises violates the law may not "object to the legality of [the premises'] search."  *Id.* (quoting *Rakas*, 439 U.S. at 141 n.9).

Like a burglar, trespasser, or squatter, an individual violating a court no-contact order is on property that the law prevents him from entering.  We therefore hold that such an individual lacks a legitimate expectation of privacy in that place and may not challenge its search on Fourth Amendment grounds.  In doing so, we join not only the Third Circuit, but every other court that has considered the matter.[3]

**AFFIRMED.**

---

[3] *See, e.g.*, *Cortez-Dutrieville*, 743 F.3d at 884–85; *Washington v. St. Albans Police Dep't*, 30 F. Supp. 2d 455, 457–58 (D. Vt. 1998); *Commonwealth v. Morrison*, 710 N.E.2d 584, 586 (Mass. 1999); *State v. Stephenson*, 760 N.W.2d 22, 26–27 (Minn. Ct. App. 2009); *see also United States v. Bey*, 825 F.3d 75, 79 (1st Cir. 2016) (noting that "[s]everal other courts have specifically held that a defendant cannot claim a reasonable expectation of privacy to the interior of a home where the defendant's very presence is unlawful due to a restraining order," but declining to reach the issue).