**William B. WASHINGTON, II, Plaintiff,**

v.

**ST. ALBANS POLICE DEPARTMENT, Sgt. Thomas Billow, Officer Richard Lewis, Vermont State Police Officers, Sr. Trooper Thomas Jacques and Sr. Trooper John Underhill, Defendants.**

No. 2:97–CV–174.

United States District Court, D. Vermont.

Oct. 27, 1998.

Thomas Zeller Carlson, Langrock, Sperry & Wool, Burlington, VT, for Plaintiff.

James F. Carroll, Powers, English, Carroll & Ritter, Ltd., Middlebury, VT, Joseph Leon Winn, Vermont Atty. General's Office, Waterbury, VT, for Defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff William B. Washington filed suit upon claims stemming from his arrest by the named Defendants on March 10, 1995. Washington claims Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures and 42 U.S.C. § 1983 by making a warrantless entry into his apartment. Additionally, he alleges Defendants used unreasonable force in accomplishing the arrest. Washington filed a Motion for Partial Summary Judgment (paper 37) on the Fourth Amendment warrantless entry claim on April 20, 1998. He also filed a Supplemental Motion for Summary Judgment (paper 44) on May 18, 1995 in which, inter alia, he seeks the Court to bar the defense of qualified immunity. Defendants St. Albans Police Department, Thomas Billow and Richard Lewis filed a Motion for Summary Judgment (paper 41) on May 1, 1998 claiming that Washington had no standing to raise a Fourth Amendment illegal entry claim and asserting qualified immunity in regard to the level of force used in accomplishing the arrest. These Defendants also argue that the level of force used was not excessive. Defendants Thomas Jacques and John Underhill filed a Motion for Summary Judgment (paper 47) on June 26, 1998, raising those same claims. The Court will address each issue in turn.

## I.  *Factual Background*

On March 8, 1995, Tabatha Cornell obtained a temporary relief from abuse order in Vermont Family Court prohibiting Washington from coming within one hundred feet of Ms. Cornell, their two children, and the apartment they shared at 34 Bishop Street in St. Albans, Vermont. Corporal Norris of the St. Albans Police Department served the temporary relief from abuse order on Washington on March 9, 1995.

On March 10, 1995, Jennifer Clogston, who also occupied one of the apartments at 34 Bishop Street, phoned the St. Albans Police Department to report that Washington was at the apartment in violation of the relief from abuse order. Clogston told Norris in an interview soon thereafter at her apartment prior to Washington's arrest that he was in the apartment and had mentioned earlier that day that he had a gun. Norris was then joined by St. Albans Police Officers Renaudette and Lewis. Norris went to the apartment and knocked, calling out Washington's name. Washington did not respond. Although Norris did not know whether any other individuals were in the apartment, he requested assistance from a canine unit from the Vermont State Police. In response, Trooper Jacques with his dog Caesar and Trooper Underhill were dispatched to 34 Bishop Street. Sergeant Billow and Officer Sweeney of the St. Albans Police Department also arrived on the scene.

Norris told the officers Washington could have a gun. Jacques knocked on the door, announcing the presence of the dog. Shortly thereafter a man and two women left the residence, telling the officers that no one else was in the apartment. The officers then entered and conducted a thorough search of the apartment. Washington was found in a closet in the bedroom. Washington told the officers he was not leaving the closet until they had a search or arrest warrant.

Versions of the ensuing events diverge dramatically. According to the officers, Washington had to be forcibly removed from the closet. Lewis pulled Washington out of

the closet and fell in the process, with Washington falling on top of him and both falling in a heap on top of Jacques. Washington resisted being handcuffed and, according to the officers, began "fighting wildly." Fearing that Washington would grab his firearm, Jacques yelled to Underhill to release the canine. The dog proceeded to bite Washington in various parts of his body. Eventually, the officers were able to restrain Washington.

Washington alleges a markedly different version of the arrest. He did tell the officers they needed a warrant at the same time that he was walking out of the closet. Lewis reached into the closet, grabbed his shirt and pulled him out. They then fell to the ground. Washington admits to brushing aside Lewis' efforts to handcuff him but eventually agreed to be handcuffed. He claims he was handcuffed and fully restrained by the officers. Billow held his ankles while Jacques pulled his arms behind his back for the handcuffs to be placed on him. According to Washington, it was after he was handcuffed that Jacques and Underhill released the dog to attack him.

## II. Summary Judgment Standard

Summary judgment shall be granted if there is no dispute of material facts, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the Court must view the case from the perspective which most favors the nonmoving party. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Piesco v. City of New York*, 933 F.2d 1149, 1154 (2d Cir.1991). Whenever the facts must be examined in order to resolve differing accounts of the truth, summary judgment must be denied. Id., at 249, 106 S.Ct. 2505 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party bears the initial burden of informing the court of the basis of the motion and of identifying those parts of the record which demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant must then come forward with specific facts, sufficient to "establish the existence of [each] element essential to that party's case, and on which the moving party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## III. Warrantless Entry: Standing

Washington objects to the law enforcement officers' warrantless entry into the apartment. At issue is Washington's standing to raise a Fourth Amendment claim.

The United States Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 149, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) set out the test for standing to assert a Fourth Amendment claim: (1) did the Defendant demonstrate a subjective expectation of privacy in the area searched; and (2) is this expectation one that society is prepared to recognize as reasonable and legitimate. *United States v. Fields*, 113 F.3d 313, 320 (2d Cir.1997) (citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).

There is a factual dispute as to whether Washington had a subjective expectation of privacy within the apartment. He has proffered evidence to suggest that Ms. Cornell had invited him to be present and expressed an intention to remove the restraining order. Also, Ms. Cornell had told him the restraining order in place had the wrong address, so that he was not permitted at 7 Gilman Street as opposed to 34 Bishop Street. Conversely, it is unlikely that one who thinks he has a right to be present in an apartment would decline answering a knock on the door or hide in a closet. Regardless there is sufficient evidence to permit an inference that Washington had a subjective belief that he had a right to be in the apartment at the time of the arrest.

Despite Washington's subjective belief of an expectation of privacy in the apartment, neither this Court nor society in general is prepared to recognize such an expectation as "reasonable" or legitimate. In *United States*

*v. Sanchez,* 635 F.2d 47, 63 (2d Cir .1980), the Second Circuit restated the general proposition that a trespasser wrongfully occupying the premises searched does not have standing to bring a Fourth Amendment claim. *See also Gallegos v. Haggerty,* 689 F.Supp. 93, 97–98 (N.D.N.Y.1988). The Second Circuit has also established that "when a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession." *United States v. Rahme,* 813 F.2d 31, 34 (2d Cir. 1987) (citing *United States v. Parizo,* 514 F.2d 52, 54–55 (2d Cir.1975)). Certainly persons who are on premises in direct violation of court orders should be in no better position to raise such claims.

On March 8, 1995, Judge Ronald Kilburn of the Vermont Family Court ordered Washington to stay at least one hundred feet away from Ms. Cornell, her children, and the apartment at 34 Bishop Street. That order was to remain in effect until a hearing on March 15, 1995. The order was served on Washington on March 9, 1995. As a result, Washington's presence within the apartment on March 10, 1995 was in direct violation of the Court order and Vermont law. See 13 V.S.A. 3705(c). His subjective expectation of privacy within the apartment was clearly not reasonable so that he lacks standing to raise a Fourth Amendment claim. The Court therefore denies Washington's Motion for Partial Summary Judgment and grants that portion of the Defendants' motions which relates to the warrantless entry claims.

IV. *Excessive Force*

The Defendants raise two defenses to the excessive force allegations. First, they deny that the level of force used to arrest Washington was "excessive." Additionally, they assert the defense of qualified immunity. On both defenses, Defendants argue they are entitled to summary judgment on the excessive force claim. Conversely, Washington moves the Court to bar the qualified immunity defense.

In *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held: "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." In *Graham* the Court also recognized "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. "The question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* "Facts and circumstances include what [Defendants] saw and heard, not what [Defendants] believed." *Javid v. Scott,* 913 F.Supp. 223, 228 (S.D.N.Y.1996).

■ At the outset there is a clear factual dispute as to whether the force used to arrest Washington was excessive. Both sides dispute whether Washington agreed to come out of the closet voluntarily. Law enforcement officers testified in depositions that Washington was "fighting wildly" after being forcibly removed from the closet. Trooper Jacques stated in his affidavit:

> Washington was on top of me, he was fighting wildly, and he was not yet fully handcuffed. I was especially concerned that Washington might gain access to the firearm on my belt. At this point I yelled to Trooper Underhill to release the dog. It was my intent to have the dog distract Washington by biting him so that I could free myself and regain control of the situation.

(Jacques Aff. ¶ 9) (Paper 49). Washington alleges the troopers had him handcuffed prior to the release of the dog and that he "kicked" and "thrashed" in order to defend himself from the dog. In light of the clear factual dispute and the fact that the evidence at this stage of the proceedings must be viewed in the light most favorable to the nonmoving party, summary judgment in favor of the Defendants is inappropriate.

■ Alternatively, Defendants also raise the defense of qualified immunity. Qualified immunity attaches to those cases in which (1)

a public official acted within the scope of his or her duties; (2) the public official's alleged improper conduct was discretionary; and (3) the public official acted in good faith. *Napolitano v. Flynn,* 949 F.2d 617, 622 (2d Cir. 1991). A defense of qualified immunity is established if "(a) the defendants' action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998) (quoting *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996)).

In the instant case, for purposes of this motion there is a distinction between the roles played by St. Albans police officers and the Vermont state troopers. All of the law enforcement officers were involved in the arrest. However, the decision to release the canine to bite Washington was made solely by Vermont state troopers, Jacques and Underhill. The Court turns then to two distinct aspects of the arrest: (1) Washington's removal from the closet and submission to the arrest; and (2) the release of the dog for the purpose of biting Washington.

■ The parties agree to a number of facts prior to the release of the dog. Washington refused to come out of the closet without a warrant being shown to him. The officers then removed him from the closet, and he ended up on the floor on top of Officer Lewis. Washington refused to be handcuffed or restrained and had to be forcibly subdued. The use of force in arresting Washington was due to his resistance. Furthermore, the officers were on notice Washington may have had a gun and posed a serious threat to their safety and the safety of others. Under *Graham,* the behavior of the officers irrespective of the use of the dog was clearly reasonable.

Officers Lewis and Billow of the St. Albans Police Department participated in arresting but had no role in releasing the canine. Those officers could not have reasonably believed their actions were in violation of Washington's constitutional or statutory rights and are therefore entitled to summary judgment based upon the defense of qualified immunity.

■ In addressing the use of the canine in the arrest, there is a clear conflict in the evidence which bears upon the forcibly removed from the closet, thrown to the ground and assaulted. He then states he was handcuffed prior to the dog being released. Jacques' and Underhill's release of the dog, Washington claims, was done after he was restrained and for the purpose of causing him injury. The dog eventually bit him on a number of places over his body, causing him to be taken to the hospital.

At this stage of the proceedings, the Court must view the evidence in the light most favorable to Washington. Assuming for purposes of this motion that he was handcuffed and restrained at the time of the canine being let go, the officers could not reasonably believe they were not violating Washington's constitutional rights in subjecting him to excessive force. The Court must therefore deny in part Jacques' and Underhill's summary judgment motion.

## V. ORDER

For the reasons stated above, the Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment (paper 37) and Supplemental Motion for Summary Judgment (paper 44). The Court hereby GRANTS the St. Albans Police Department's, Sgt. Billow's and Officer Lewis' Motion for Summary Judgment (paper 41). The Court hereby GRANTS in part and DENIES in part Troopers Jacques and Underhill's Motion for Summary Judgment (paper 47).