**STATE of Minnesota, Respondent,**

v.

**Cedric L. STEPHENSON, Appellant.**

No. A07–2312.

Court of Appeals of Minnesota.

Feb. 3, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Alina Schwartz, Campbell Knutson, Eagan, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, St. Paul, MN; and Aakash Chandarana, Special Assistant State Public Defender, Briggs and Morgan, Minneapolis, MN, for appellant.

Considered and decided by
BJORKMAN, Presiding Judge; ROSS, Judge; and CONNOLLY, Judge.

## OPINION

BJORKMAN, Judge.

Appellant challenges the district court's denial of his motion to suppress evidence of his presence at his home that was obtained during a warrantless search. Because there was a specific and valid legal order prohibiting appellant's presence at the home at the time the police officer conducted the search, appellant had no reasonable expectation of privacy, and we therefore affirm.

## FACTS

On July 13, 2007, appellant Cedric Stephenson's wife, T.L.S., petitioned for an order for protection (OFP) against appellant due to verbal and mental abuse and threats of physical violence. The district court granted the OFP on August 3, 2007, ordering appellant not to enter the family residence (the residence). The OFP was effective for a two-year period and specifically stated: "You are forbidden to enter or stay at petitioner's residence for any reason, even if invited to do so."

Approximately two weeks after the district court issued the OFP, appellant failed to appear in court for a probation-violation hearing. The district court issued a bench warrant for his arrest; the warrant identified appellant's address as the residence from which he was excluded by the OFP.

A few days later, Corporal Eric Kittelson of the Carver County Sheriff's Department went to the residence to execute the warrant. When Kittelson arrived at the residence, he ran a registration check on a vehicle parked in the driveway. In doing so, he learned that there was a valid OFP against appellant which prohibited his presence at the residence. Kittelson then approached the house, a split-level twin home, and saw a television on in the lower level. He looked through the blinds and

saw appellant sitting on the couch watching television.[1] Kittelson had been to the residence "numerous times" and knew both appellant and T.L.S. "by sight."

Kittelson went to the front door and rang the doorbell. T.L.S. answered the door; Kittelson asked to talk to appellant, but she said he was not there. Kittelson told her that he knew appellant was in the basement because he saw him through the window. Kittelson also told her that he had a warrant for appellant's arrest. T.L.S. let Kittelson into the home and told him that appellant was "[i]n the bathroom." Kittelson arrested appellant who was later charged with misdemeanor violation of the OFP.

Appellant challenged the constitutionality of the warrantless search of the residence. The state concedes that Kittelson's act of peering through the blinds constitutes a search. The only evidence submitted to the court was Kittelson's report. The district court denied appellant's motion to suppress, stating:

> Defendant had no reasonable expectation of privacy because he was wrongfully at the residence pursuant to a court order—an OFP. Because Defendant had no reasonable expectation of privacy due to the fact that he was legitimately expelled from the premises that was searched, there is no 4th Amendment violation.

Appellant agreed to submit the case for a stipulated facts trial. The district court concluded that appellant knew of the OFP and that he violated the order by entering the residence. This appeal, challenging the district court's pretrial suppression ruling, follows.

## ISSUE

Does a person who is prohibited from entering or staying at a residence pursuant to a valid court order have a reasonable expectation of privacy in that residence?

## ANALYSIS

■ When the facts are undisputed, a district court's pretrial suppression ruling presents a question of law. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992). We independently review the facts to determine whether the district court erred in suppressing, or not suppressing, the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999).

■ The Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution protect an individual's right to be free from unreasonable searches of their "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. But a search does not violate a person's constitutional rights unless he or she has a legitimate expectation of privacy in the area or items searched.[2] *Rakas v.*

---

1. In its omnibus order, the district court noted: "[t]here was some argument as to whether the blinds were open or closed at the time, however the Court can clearly infer from the police reports that the blinds were open enough for Dep. Kittelson to observe Defendant—who he knew by sight."

2. Appellant characterizes the issue in this case as one of "standing." But as the state notes, the district court did not determine whether appellant had standing to challenge

the search. Instead, the district court determined that appellant did not have a reasonable expectation of privacy in the premises, and therefore the search did not violate appellant's Fourth Amendment rights. *See Rakas v. Illinois*, 439 U.S. 128, 138–40, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978) (stating that proper inquiry is to address defendant's Fourth Amendment rights directly, rather than through the lens of standing); *see also Minnesota v. Carter*, 525 U.S. 83, 87, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998) (noting that the

*Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). To establish a protected interest, a defendant must demonstrate (1) "a subjective expectation of privacy" and (2) that this expectation "was reasonable in light of 'longstanding social customs that serve functions recognized as valuable by society.'" *State v. Carter,* 569 N.W.2d 169, 174 (Minn.1997) (quoting *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990)), *rev'd on other grounds, Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

### A. Appellant did not show he had a subjective expectation of privacy in the residence.

██ Appellant argues that he had a subjective and reasonable expectation of privacy in the residence simply because he is the owner, citing *State v. Jordan,* 742 N.W.2d 149, 155–56 (Minn.2007) (concluding that a homeowner has a reasonable expectation "that his person, house, papers, and effects would be secure against an unauthorized nighttime search and seizure"). But this argument over-simplifies the constitutional analysis. *Jordan* supports the conclusion that a homeowner has standing to challenge a search of his residence, but the inquiry does not end there. Rather, the court must further determine whether the homeowner had a subjective expectation of privacy and "whether the disputed search has infringed on the privacy interest of a homeowner that the Fourth Amendment was designed to protect." 742 N.W.2d at 155–56. Thus, appellant's status as the owner of the residence does not relieve him of the necessity of showing that he had a subjective expec-

tation of privacy in the residence. Appellant has not made this showing.

Not only has appellant failed to present evidence that he had a subjective expectation of privacy, but his conduct demonstrates otherwise. As the state points out, if appellant had a subjective expectation of privacy in his home it is unlikely he would have hidden in the bathroom when Kittelson knocked on the door to gain entry to the residence. Thus, even if we found that appellant's ownership of the residence is indicative of a subjective expectation of privacy, his own actions undermine such a conclusion.

### B. Any expectation of privacy appellant may have had in the residence was unreasonable.

Assuming for purposes of our analysis that appellant had a subjective expectation of privacy in the residence at the time of the search, we turn to whether his expectation was reasonable in light of the OFP. This is a matter of first impression in Minnesota. Appellant urges us to follow "Minnesota law [which] recognizes that individuals have a reasonable expectation of privacy in their own homes and thus have the capacity to challenge warrantless entries and searches," citing *In re Welfare of B.R.K.,* 658 N.W.2d 565, 571–72 (Minn. 2003), and *Jordan,* 742 N.W.2d at 155–56. Appellant argues that this line of cases establishes that he has standing to challenge the search.

As noted above, the relevant inquiry is not whether appellant, as the owner of the residence, has standing to challenge the search. Rather, we must determine

Court in *Rakas* "expressly rejected" analyzing Fourth Amendment rights "under the rubric of 'standing' doctrine"); *State v. Robinson,* 458 N.W.2d 421, 423 (Minn.App.1990) (citing *Rakas* and stating that in cases such as this,

the "correct analysis" focuses on the extent of a particular defendant's Fourth Amendment rights rather than on traditional standing principles), *review denied* (Minn. Sept. 14, 1990).

whether appellant's alleged subjective expectation of privacy in the residence from which he was banned by a valid OFP was reasonable. To answer this question, we must determine whether appellant's claimed privacy expectation is one that society would recognize as reasonable. *B.R.K.*, 658 N.W.2d at 572.

While the supreme court has not specifically addressed whether an individual's subjective expectation of privacy in a residence from which he is banned by a valid OFP is reasonable, courts in other jurisdictions have held that when a defendant's presence at the home is prohibited by law, his expectation of privacy is not one that "society in general is prepared to recognize ... as 'reasonable' or legitimate." *Washington v. St. Albans Police Dep't*, 30 F.Supp.2d 455, 457 (D.Vt.1998).

In *St. Albans*, a court order prohibited the defendant from having contact with his girlfriend or their children and from coming within 100 feet of their shared apartment. *Id.* at 456. The defendant was found and arrested in the apartment and he challenged the officers' warrantless entry into the apartment leading to his arrest. *Id.* at 456–57. In rejecting the defendant's argument, the court stated: "[the defendant's] presence within the apartment ... was in direct violation of the Court order and Vermont law. His subjective expectation of privacy within the apartment was clearly not reasonable so that he lacks standing to raise a Fourth Amendment claim."[3] *Id.* at 458 (citations omitted).

The Supreme Judicial Court of Massachusetts rejected the same argument in *Commonwealth v. Morrison*, where the defendant's girlfriend obtained an OFP against him, and police officers specifically advised the defendant of the OFP and "told him that he would be arrested if he made any contact with [his girlfriend] while the order remained in force." 429 Mass. 511, 710 N.E.2d 584, 585 (1999). Police officers were called to the girlfriend's apartment after reports of shouting and found the defendant present. *Id.* The defendant subsequently challenged the warrantless entry that led to his arrest. The Supreme Judicial Court of Massachusetts reversed the grant of the defendant's suppression motion, stating:

> The defendant in this case was the subject of a protective order forbidding his presence on the very premises in which he claims that society should recognize his right to quiet enjoyment.... It is simply nonsense to say that society is prepared to recognize his right to be where society by the process of the law has ordered him not to be.... What deprives this defendant of a reasonable expectation of privacy is not his status as a law violator in general, but the fact that he was under a specific and valid legal order not to be in this particular place.

*Id.* at 586.

We find these cases instructive and persuasive. As in both *St. Albans* and *Morrison*, the district court here issued a valid order specifically directing appellant not to enter the residence, "even if invited to do so." Appellant was on notice that "[a] police officer shall arrest you and take you to jail if the police officer believes you have ·violated [the OFP]." Under these circumstances, any expectation of privacy in the residence appellant may have had was not reasonable. Appellant had no

---

3. Notably, the court's use of the term "standing" emphasizes an inconsistency among jurisdictions in defining the appropriate Fourth Amendment analysis. Nonetheless, the approach articulated in *Carter*, 525 U.S. at 87, 119 S.Ct. at 472, in which the Court noted that *Rakas* "expressly rejected" analyzing Fourth Amendment rights "under the rubric of 'standing' doctrine," applies here.

right to be at the residence. We are not prepared to find that society would legitimize his unlawful presence in the residence by recognizing a privacy right. The district court did not clearly err in finding that appellant's constitutional rights were not violated and denying his motion to suppress.

## DECISION

The district court did not err in finding that appellant had no reasonable expectation of privacy in a residence from which he was excluded by a valid court order.

**Affirmed.**