NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

2d Circuit Court-Plymouth District Division
No. 2014-0725

THE STATE OF NEW HAMPSHIRE

v.

TYLER BOYER

Argued: June 24, 2015
Opinion Issued: February 12, 2016

Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. The State appeals an order of the Circuit Court (Rappa, J.) granting the motion of the defendant, Tyler Boyer, to suppress evidence obtained when, without a warrant, the police entered the apartment that he shared with his girlfriend and arrested him. The trial court found that the defendant had standing to object to the search despite the fact that, at the time of the search, he was present with his girlfriend in violation of a court order that prohibited him from having contact with her. The State argues that the defendant did not have standing to challenge the search because, given his presence in the apartment in violation of the order, he could not have an

expectation of privacy in the apartment that society is prepared to recognize as reasonable.  We agree with the State, and, therefore, reverse and remand.

The following facts are undisputed or are otherwise supported by the record.  In February 2014, the defendant lived with his girlfriend, A.N., in an apartment in Ashland.  On February 5, the defendant was arrested for "act[ing] in an extremely violent manner" toward A.N. and "block[ing] [her] from calling the police."  He was released on personal recognizance bail, subject to specific conditions.  The bail order prohibited him from having contact with A.N., coming within 100 feet of her, and from "interfer[ing]" with A.N. at her residence.  The order also required that the defendant live in Ellsworth.  A.N. continued living in the Ashland apartment.

Three days after the defendant was released, two officers of the Ashland Police Department observed the defendant's truck parked near the apartment in Ashland where he had lived with A.N.  Without obtaining a warrant, the officers knocked on the door of the apartment and identified themselves as police officers.  A.N. answered the door, and the officers asked her if the defendant was in the apartment.  A.N. admitted that the defendant was there, and the officers asked to come in and talk to him.  A.N. gave them permission to enter the apartment.  The officers did so, found the defendant inside, and arrested him.  Thus, the "evidence seized" was the defendant himself.  The defendant was charged with "indirect criminal contempt" based upon his violation of a condition of the bail order.

Prior to trial, the defendant filed a motion to suppress, arguing that the officers' warrantless search of his apartment violated the State and Federal Constitutions.  See N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV.  The State objected, arguing that the officers' search was lawful.  The State also asserted that, because the bail order prohibited the defendant from contacting A.N., her presence in the apartment eliminated any legitimate expectation of privacy that the defendant might have had at the time of the search, and, therefore, the defendant lacked standing to challenge the search.  The defendant countered that he had standing because he "had a privacy interest in keeping the police out of his home, even if he was temporarily forbidden to return home."

The trial court concluded that the defendant had standing to challenge the search because "[t]he warrantless search occurred in the Defendant's home."  Addressing the merits of the motion, the trial court ruled that the search was unconstitutional because A.N.'s decision to allow the officers into the apartment was not the product of free, knowing, and voluntary consent.  The trial court denied the State's motion to reconsider, and this appeal followed.

On appeal, the State contests only the trial court's conclusion that the defendant had standing to challenge the officers' search of his apartment. The State does not defend the constitutionality of the underlying warrantless search, nor does it challenge the trial court's ruling that the apartment was the defendant's home. When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo. State v. Roy, 167 N.H. 276, 282 (2015). The State cites both the State and Federal Constitutions in challenging the trial court's ruling that the defendant had standing. We have held that the State Constitution is often more protective of individual rights than the Federal Constitution with respect to unreasonable searches and seizures. See, e.g., State v. Settle, 122 N.H. 214, 218 (1982). We first address the State's argument under the State Constitution, and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the State Constitution provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. "Evidence that is obtained in violation of Part I, Article 19 may be subject to exclusion from evidence in a criminal trial." State v. Davis, 161 N.H. 292, 295 (2010).

"A preliminary inquiry which any court must make before it will consider a motion to suppress evidence based upon an unreasonable search or seizure is whether the individual filing the motion has standing." State v. Sidebotham, 124 N.H. 682, 686 (1984).[*] "Standing confers upon an individual the right to challenge unreasonable government conduct." Id. "The threshold question as to the determination of a party's standing to challenge the introduction of evidence by means of a motion to suppress is whether any rights of the moving party were violated." State v. Gubitosi, 152 N.H. 673, 680 (2005). A defendant may have standing based upon: (1) being charged with a crime in which possession of an item or thing is an element, which confers automatic standing; or (2) having a legitimate expectation of privacy in the place searched or the item seized. Id. To claim standing based upon a legitimate expectation

---

[*] We note that the United States Supreme Court has rejected the use of the traditional rubric of standing in search and seizure cases, and, instead, applies substantive Fourth Amendment doctrine to determine whether a defendant can challenge a search. See, e.g., Minnesota v. Carter, 525 U.S. 83, 87-88 (1998); Rakas v. Illinois, 439 U.S. 128, 138-40 (1978). In other words, the Court asks "whether the challenged search or seizure . . . infringed an interest of the defendant which the Fourth Amendment was designed to protect." Rakas, 439 U.S. at 140. However, given that the parties in this case frame their arguments in terms of whether the defendant has standing, the trial court analyzed standing, and because the concept of standing is "theoretically separate, but invariably intertwined" with a defendant's rights under the Fourth Amendment, id. at 139, and Part I, Article 19, we employ our traditional standing analysis here in regard to the defendant's claims under the State Constitution.

of privacy, a defendant must establish both: (1) a subjective expectation of privacy in the place searched or the item seized; and (2) that his subjective expectation is legitimate because it is "one that society is prepared to recognize as reasonable." State v. Goss, 150 N.H. 46, 49 (2003) (quotations omitted). Because neither party argues that the defendant has standing based upon a legitimate expectation of privacy in the item seized, we address only the question of whether the defendant has a legitimate expectation of privacy in the place searched — the apartment.

The State argues that, "[w]hether or not [the] defendant had a subjective expectation of privacy" in the apartment, "such an expectation cannot be deemed objectively reasonable" because, at the time of the search, the defendant was present with A.N. in violation of a condition of the bail order. Therefore, the State asserts, the defendant's wrongful presence in the apartment at the time of the search deprives him of standing. See, e.g., State v. Jacobs, 2 P.3d 974, 978 (Wash. Ct. App. 2000) ("[S]ociety does not recognize as reasonable the privacy rights of a defendant whose presence at the scene of the search is 'wrongful.'"). The defendant counters that, despite his presence in the apartment with A.N. at the time of the search in violation of the no-contact order, he had standing because he continued to have a legitimate expectation of privacy in his apartment.

"[T]he protections provided by Part I, Article 19 are never in sharper focus than when viewed in the protection of one's dwelling." State v. Sawyer, 145 N.H. 704, 706 (2001) (quotation omitted). Here, prior to the issuance of the bail order, the Ashland apartment was the defendant's home, in which he had a heightened expectation of privacy. See State v. Diaz, 134 N.H. 662, 666 (1991) (observing that "significant additional privacy interests . . . arise at the threshold of the living quarters," including the defendant's rented motel room). There is no dispute that, prior to the issuance of the bail order, the defendant had a constitutionally protected expectation of privacy in his home. See Mancusi v. DeForte, 392 U.S. 364, 367 (1968) (recognizing that the Fourth Amendment "does not shield only those who have title to the searched premises"); 6 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.3(a), at 167-70 (5th ed. 2012) (explaining that present possessory interest of tenants, like that of owner-occupant, creates expectation of privacy sufficient to claim standing). Accordingly, the narrow question before us is whether the defendant's presence in the apartment with A.N. at the time of the search — in violation of the bail order — vitiated his pre-existing legitimate expectation of privacy such that he did not have standing to challenge the search.

Whether society will recognize a particular individual's expectation of privacy as reasonable "does not turn on whether [a] hypothetical reasonable person would hold the same expectation of privacy, but rather whether the expectation of privacy is justified or legitimate" based upon "our societal

understanding regarding what deserves protection from government invasion." United States v. Alabi, 943 F. Supp. 2d 1201, 1247 (D.N.M. 2013). No single factor determines whether an individual may claim a legitimate expectation of privacy in a particular place. See Oliver v. United States, 466 U.S. 170, 177-78 (1984) (observing that, when determining whether a search infringes upon individual privacy, the Supreme Court has considered many factors, including "our societal understanding that certain areas deserve the most scrupulous protection from government invasion"). Rather, "[t]he determination of whether a person has a legitimate expectation of privacy with respect to a certain area [must be] made on a case-by-case basis, considering the unique facts of each particular situation." State v. Tyler, 867 N.W.2d 136, 168 (Iowa 2015) (quotations omitted); see Settle, 122 N.H. at 219 (observing that the legitimate expectation of privacy test requires courts to "draw fine distinctions" between similar factual circumstances). We conclude that the defendant did not have standing to challenge the search because he was present in the apartment at the time of the search in violation of the bail order, and, under these circumstances, any subjective expectation that the defendant may have had in the apartment is not one that society is prepared to recognize as reasonable.

We find persuasive two cases relied upon by the State in which courts held that, because a defendant's presence in a home was prohibited by law, his expectation of privacy was not one that society is prepared to recognize as reasonable. In Commonwealth v. Morrison, 710 N.E.2d 584 (Mass. 1999), the defendant was arrested for violating a protective order after he was found in the residence of the woman whom he had been ordered not to contact based upon "a history of domestic problems." Morrison, 710 N.E.2d at 585-86. The Supreme Judicial Court of Massachusetts concluded that, although the defendant, as an overnight guest, had a privacy interest in the woman's home, the defendant did not have standing to challenge the warrantless entry that led to his arrest because he "was the subject of a protective order forbidding his presence on the very premises in which he claims that society should recognize his right to quiet enjoyment." Id. at 586. The court observed:

> It is simply nonsense to say that society is prepared to recognize his right to be where society by the process of the law has ordered him not to be. . . . What deprives this defendant of a reasonable expectation of privacy is not his status as a law violator in general, but the fact that he was under a specific and valid legal order not to be in this particular place.

Id.

Similarly, in State v. Stephenson, 760 N.W.2d 22 (Minn. Ct. App. 2009), the defendant sought to suppress evidence of his presence at his home in violation of a protective order that prohibited him from "enter[ing] the family residence" for a two-year period and specifically stated that the defendant was

5

"forbidden to enter or stay at [the] residence for any reason, even if invited to do so." Stephenson, 760 N.W.2d at 23 (quotation omitted). The court affirmed the denial of the defendant's motion to suppress, observing that, because the defendant had "no right to be at the residence," the court was "not prepared to find that society would legitimize his unlawful presence in the residence by recognizing a privacy right." Id. at 26-27.

The defendant argues that Morrison and Stephenson are distinguishable because the protective order in each case categorically prohibited the defendant's presence in the place searched without regard to the presence of the protected person. In contrast, here, he argues, "if the order meant to bar [the defendant] from entering the apartment regardless of whether, at the relevant time, [A.N.] is or might be in it, it would say so explicitly." This, however, is a distinction without a difference.

The bail order in this case provided that the defendant "shall not have any contact with [A.N.], whether in person or through . . . any other method," prohibited the defendant from "coming within 100 feet" of A.N., ordered the defendant "not to interfere with [A.N.] at [her] residence," and required him to live in Ellsworth. Because A.N. lived in the Ashland apartment, the defendant's presence in or near the apartment was likely to bring him into contact with A.N., or likely to result in "interference" with her at her residence. Thus, we see no meaningful difference between the bail order in this case and the orders issued in Morrison and Stephenson.

Moreover, as in both Morrison and Stephenson, the "evidence seized" here was the defendant himself, not tangible evidence of another crime unrelated to the conditions of the bail order. See Morrison, 710 N.E.2d at 585-86 (warrantless entry into apartment of third-party resulted in defendant's arrest for violation of protective order); Stephenson, 760 N.W.2d at 23 (motion to suppress "evidence of [defendant's] presence at his home"). Moreover, the manner in which this "evidence" would be used at trial would involve only the testimony of the arresting officers that they observed the defendant in the apartment. Cf. United States v. Ceccolini, 435 U.S. 268, 280 (1978) ("[T]he exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object."). We find this factor to be significant. Had the search in this case been for evidence of a crime unrelated to the defendant's violation of the bail order, the defendant may have had a legitimate privacy interest in the items seized notwithstanding the terms of the bail order. Here, however, the terms of the bail order directly impact the defendant's privacy interest in his "mere presence" in the apartment. As the Morrison court observed, "[w]hat deprives this defendant of a reasonable expectation of privacy is not his status as a law violator in general, but the fact that he was under a specific and valid legal order not to be in this particular

6

place." Morrison, 710 N.E.2d at 586. "It seems incredible that the defendant could maintain that he had a reasonable expectation of privacy" as to his presence "in the home of a person with whom he had been ordered by the court to have no contact." United States v. Dye, No. 1:10CR221, 2011 WL 1595255, at *5 (N.D. Ohio Apr. 27, 2011).

Our conclusion is consonant with "the public policy of this state to prevent and deter domestic violence" and to provide victims of domestic violence with "immediate and effective police protection and judicial relief." State v. Craig, 167 N.H. 361, 373 (2015) (quotations omitted); cf. RSA 173-B:10, II (2014) ("[A]n arrest for abuse may be made without a warrant upon probable cause, whether or not the abuse is committed in the presence of the peace officer."). Were we to recognize the defendant's privacy interest in the apartment as legitimate despite his violation of a court order fashioned to protect A.N. from the defendant, our holding would jeopardize the safety of domestic violence victims by deterring the police from entering a home without a warrant, even when there is probable cause to believe violence may be imminent. Given society's interest in preventing and deterring domestic violence and providing effective police protection, we are not prepared under these circumstances to recognize the defendant's privacy interest in the apartment as reasonable.

The defendant argues that our holding that he does not have standing to challenge the search under these circumstances would "lead to absurd results," and means that he would lack standing to challenge the search of any place where he could not lawfully be present. We disagree. We need not decide whether there are other circumstances under which the defendant would have standing to challenge a search of the apartment, notwithstanding his violation of the bail order. There may well be circumstances under which society would be prepared to recognize the defendant's expectation of privacy in the apartment as reasonable.

Accordingly, because of the unique circumstances of this case — where the defendant was present in the apartment with A.N. in violation of a court order — the defendant did not have a legitimate expectation of privacy in the apartment at the time of the search. Therefore, he did not have standing under Part I, Article 19.

We turn now to the defendant's arguments under the Fourth Amendment. "[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (quotation omitted). This test is the same as that applied to determine whether a search violated a

defendant's rights under Part I, Article 19. See Goss, 150 N.H. at 48-49 (adopting the federal expectation of privacy analysis under Part I, Article 19). Accordingly, because we have concluded that the defendant did not have a legitimate expectation of privacy under Part I, Article 19, and because we have recognized that the Federal Constitution affords no greater protection as to a defendant's expectation of privacy, see Gubitosi, 152 N.H. at 680; Goss, 150 N.H. at 49, we reach the same conclusion on this issue under the Federal Constitution as we do under the State Constitution.

Nonetheless, the defendant argues that, "even setting aside the legitimate expectation of privacy analysis," we should hold that the United States Supreme Court's decision in Florida v. Jardines, 133 S. Ct. 1409 (2013), provides him with additional protection. In that case, the Court concluded that, regardless of whether the defendant had a legitimate expectation of privacy in the front porch of his home, law enforcement officers' use of a drug-sniffing dog on the porch was a trespassory invasion of the curtilage of his home, which constituted a "search" for Fourth Amendment purposes. Jardines, 133 S. Ct. at 1414-18. Thus, under Jardines, a search occurs whenever the government physically intrudes into a constitutionally protected area. Id. at 1414. The defendant asserts that "[r]egardless of whether [he] had a right to be in the apartment himself, there is no evidence that the bail order deprived [him] of his right to exclude outsiders from the apartment," and, therefore, he "had standing under Jardines to challenge" the physical intrusion by the police into the apartment. We disagree.

We are not persuaded that, given the specific circumstances of this case, the Jardines trespass theory supports the defendant's standing argument. The search did not violate the defendant's constitutional rights as recognized in Jardines for largely the same reasons as those articulated in our analysis of the defendant's expectation of privacy: just as the bail order eliminated any reasonable expectation of privacy that the defendant might have had in the apartment at the time of the search, it also removed, at least temporarily, any property interest that might have allowed him to challenge the search. Cf. id. at 1419 (Kagan, J., concurring) ("It is not surprising that in a case involving a search of a home, property concepts and privacy concepts should . . . align. The law of property naturally enough influences our shared social expectations of what places should be free from governmental incursions." (quotations and brackets omitted)).

"A common idiom describes property as a 'bundle of sticks' — a collection of individual rights which, in certain combinations, constitute property." United States v. Craft, 535 U.S. 274, 278 (2002). One of these rights is the right to exclude others. Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978). As we noted earlier, prior to the issuance of the bail order, the apartment was the defendant's home. However, the bail order prohibited the defendant from being present in the apartment with A.N. and required him to live in Ellsworth.

8

Thus, just as this order affected his expectation of privacy in the apartment, it also temporarily removed those "sticks" of his property interest in the apartment that would otherwise give rise to his right to exclude others. Cf. United States v. Owen, 65 F. Supp. 3d 1273, 1281 (N.D. Okla. 2014) ("The trespass doctrine enunciated in . . . Jardines requires an existing constitutional property interest."). Accordingly, because the defendant was prohibited from being present in the apartment with A.N., at the time of the search he lacked the property interest necessary to invoke the protections of the trespass theory enunciated in Jardines. Cf. id. at 1285 (observing that, because defendant "did not claim or obviously possess an interest in the firearm at the time of the seizure," it was "unclear whether the trespass doctrine [in Jardines] [was] applicable" (emphasis added)). Thus, we conclude that, due to the restrictions in the bail order, just as the defendant cannot establish a legitimate expectation of privacy in the apartment sufficient to claim standing, he did not have a sufficient property interest at the time of the search to avail himself of the trespass theory recognized in Jardines.

Reversed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.

9