**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0556, <u>State of New Hampshire v. Craig Michael Massua</u>, the court on October 17, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Craig Michael Massua, appeals his convictions for possession of heroin and possession of heroin with intent to distribute. <u>See</u> RSA 318-B:2 (Supp. 2015). He argues that the Superior Court (<u>Ignatius</u>, J.) erred in denying his motion to suppress, asserting that the police officers' warrantless entry into his hotel room violated his rights under the State and Federal Constitutions. <u>See</u> N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We first address his claim under the State Constitution, and rely upon federal law only to aid our analysis. <u>State v. Ball</u>, 124 N.H. 226, 231-33 (1983).

A warrantless search is <u>per</u> <u>se</u> unreasonable unless it satisfies the requirements of a recognized exception to the warrant requirement. <u>State v. Francis</u>, 167 N.H. 598, 602 (2015). "The State has the burden of proving by a preponderance of the evidence that the warrantless search fell within one of the narrow, judicially-crafted exceptions." <u>State v. Robinson</u>, 158 N.H. 792, 797 (2009). When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. <u>State v. Boyer</u>, 168 N.H. 553, 556 (2016). Our review of the trial court's legal conclusions, however, is <u>de</u> <u>novo</u>. <u>Id</u>.

The trial court found that the exigent circumstances exception to the warrant requirement justified the officers' entry into the hotel room. "Exigent circumstances exist where the police face a compelling need for immediate official action and a risk that the delay caused by obtaining a search warrant would create a substantial threat of imminent danger to life or public safety or <u>likelihood that evidence will be destroyed</u>." <u>State v. Rodriguez</u>, 157 N.H. 100, 103-04 (2008) (quotations and citation omitted). Whether a situation is sufficiently urgent to permit a warrantless search depends upon the totality of the circumstances, <u>State v. Theodosopoulos</u>, 119 N.H. 573, 580 (1979), and is largely a question of fact for the trial court, whose determination we will not disturb unless it is clearly erroneous, <u>State v. MacDonald</u>, 129 N.H. 13, 21 (1986).

Our totality of circumstances review includes examining the overall reasonableness of the officers' conduct prior to entry, and no single factor controls. Robinson, 158 N.H. at 798. "When reviewing the totality of the circumstances, we consider the degree to which the exigency relied upon by the State was foreseeable." State v. Santana, 133 N.H. 798, 806 (1991). However, "the extent to which exigency was foreseeable at the time the decision was made to forego or postpone obtaining a warrant does not, by itself, control the legality of a subsequent warrantless search triggered by that exigency." Id. (quotation omitted).

The record shows that the defendant's arrest closely followed the investigation and arrest of his brother, Steven Massua, who was believed to be selling drugs at the Quality Inn in Merrimack. On August 31, 2014, Detective Cassell obtained a list of guests registered at the hotel and noticed that Room 140 was registered in the defendant's name from July 15, 2014, through October 2, 2014. Cassell assumed that Steven had reserved the room using his brother's name. The police arrested Steven on September 25, 2014, shortly after he completed an apparent drug transaction behind the hotel and left the hotel in his vehicle. Earlier that day, the police had assigned a "containment team" of four officers to secure Steven's hotel room following the planned arrest.

During the arrest, Steven informed Cassell that the defendant and one other occupant remained in the hotel room. At the same time, the patrol supervisor, Lieutenant Tarleton, requested that more officers report to the hotel because people were showing up to purchase drugs. Officer Marcotte testified that he and the other members of the containment team, who were waiting in a nearby parking lot, were told to report to the hotel where, he learned, "there were numerous people showing up" who "were there to pick up or make drug . . . buys." Officer McGuire of the containment team testified that the individuals informed the police that they arrived to purchase heroin and marijuana from the defendant. Cassell reported to the hotel and showed the containment team the location of Room 140. While the officers were in the hallway, the defendant opened the door to Room 140, stuck his head into the hallway, saw the officers, and "jump[ed] back in and slam[med] the door." Marcotte testified that "[a]t that point, we were afraid that [the occupant] was actually destroying evidence inside the room." The officers quickly proceeded down the hallway to Room 140, knocked, announced themselves as the police, and after receiving no response, used the hotel's master room key to enter without a warrant.

Marcotte testified that upon entering the room, he observed "lots of tin foil with burnt, brown residue," which was consistent with heroin use. The officer also observed "large E-cigarettes," which are used to smoke heroin. The officers handcuffed the defendant and the other occupant and conducted "pat frisk" searches for weapons. In the defendant's pocket, they found a glass pipe

2

and a plastic bag with a "whitish-brown substance" later identified as heroin. The police arrested the defendant and secured the hotel room, but they did not search the room until they obtained a search warrant later that evening. Cassell did not include, in his search warrant application, Marcotte's observations of the interior of the room or information from the pat-down search of the defendant.

The defendant first argues that three weeks prior to the warrantless search the police had probable cause to believe that Steven was dealing heroin from the hotel; thus, he argues, the police had an ample opportunity to obtain a search warrant before they arrested Steven. "Certainly the presence or absence of an ample opportunity for getting a search warrant is pertinent to our inquiry." Santana, 133 N.H. at 805 (quotation omitted). However, a police officer is not required to obtain a search warrant as soon as probable cause is established. Id. "Likewise, an officer's failure to avail himself of an early opportunity to obtain a warrant will not automatically preclude him from relying on exigent circumstances." Id. Thus, we must consider the totality of the circumstances to determine whether the exigency was foreseeable. See id. at 806.

The defendant argues that any likelihood that Steven's arrest would result in the destruction of evidence in the hotel room was entirely foreseeable. Cassell testified, however, that he did not believe that anyone other than Steven was staying in Room 140 until Steven informed him, during the arrest, that the defendant and another person were in the room. The defendant asserts that Cassell unjustifiably assumed that Steven had reserved Room 140 with the defendant's name; he should have assumed that the defendant was staying in the room. However, Cassell testified that he was familiar with both the defendant and Steven, that the defendant "had never been seen coming and going from the hotel," and that "Steven was always the one seen coming and going." Cassell also testified that based upon his experience, drug dealers tend not to reserve rooms under their own names, in order to evade police detection and avoid responsibility for criminal activity that may occur in the room. Thus, the record supports a finding that, prior to Steven's arrest, the police did not foresee that the defendant would be in Room 140. See State v. Boyer, 168 N.H. at 556.

Moreover, the trial court found that the exigency was created not by Steven's arrest, but by the arrival of individuals at the hotel to purchase drugs from the defendant at approximately the same time as the arrest. This circumstance distinguishes this case from Santana, the case upon which the defendant primarily relies. In Santana, the drug buyer was arrested after completing the first part of a two-part transaction that had been arranged by the police. We held, first, that there was sufficient evidence of exigency to justify a warrantless entry into the dealer's apartment because the dealer would have been "spooked," and thus might have disposed of or concealed

3

evidence if the buyer did not return to complete the second part of the sale. Santana, 133 N.H. at 804. We concluded, however, that the police could not rely upon the exigent circumstances exception because they knew in advance that their decision not to allow the second part of the transaction to occur would create the exigency. Id. at 807.

Here, the evidence of exigency was similarly sufficient. The police had detained buyers in the hotel parking lot, and the defendant would have been "spooked" if they failed to appear to complete their transactions. The police saw the defendant peer out his hotel room door before they announced their presence, which suggests that he may already have been "spooked." However, in this case, unlike Santana, the police did not create the exigency. The buyers were not conducting transactions arranged by the police. The police did not know that the defendant was dealing drugs from the hotel, and they did not know that the defendant's customers would appear for drug buys at approximately the same time as Steven's arrest. These circumstances created a compelling need for immediate official action to protect the public and prevent the destruction of evidence justifying the officers' warrantless entry into the hotel room. See Rodriguez, 157 N.H. 103-04.

Because our State Constitution provides at least as much protection as does the Federal Constitution under these circumstances, see Santana, 133 N.H. at 807; Illinois v. McArthur, 531 U.S. 326, 331-33 (2001), we reach the same result under the Federal Constitution.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**

4