*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1601**

State of Minnesota,
Respondent,

vs.

William Henderson, Sr.,
Appellant.

**Filed January 9, 2017
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-14-6433

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Ryan C. Young, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Smith, John, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from his conviction of being a prohibited person in possession of a firearm, appellant argues that the district court erred in holding that he did not have standing to challenge the warrantless search of his fiancée's apartment. Because appellant had been issued a notice of trespass by an apartment complex with authority under the lease to exclude him and therefore did not have a reasonable expectation of privacy in his fiancée's apartment, we affirm.

## FACTS

In March 2014, off-duty police officers working as uniformed security personnel at a housing complex (the complex) found appellant William Henderson, Sr., to be in possession of Methadone without a prescription in violation of the complex's policies prohibiting drug possession. The officers subsequently issued Henderson a notice of trespass prohibiting him from returning to the complex for one year.

Seven days later, off-duty police officers working as security personnel for the complex, while watching security cameras, observed a man whom they believed to be Henderson enter an apartment in the complex. The officers were aware that Henderson, who was not a leaseholder, had been staying at his fiancée's apartment in the complex. The officers went to Henderson's fiancée's apartment, and knocked and kicked her door until Henderson answered. When Henderson attempted to close the door on the officers, the officers forced the door open and arrested Henderson inside. The officers recovered a handgun in the apartment, and Henderson subsequently admitted the handgun was his.

Henderson was prohibited from possessing a firearm due to a prior conviction.

Henderson moved to suppress the firearm and his statements, but the district court denied the motion. After a stipulated facts trial, the district court found Henderson guilty of being a prohibited person in possession of a firearm. This appeal follows.

## DECISION

The only issue before us is the district court's determination that Henderson had no standing to contest the warrantless entry and search of his fiancée's apartment because he did not have a reasonable expectation of privacy in his fiancée's apartment based on a privately-issued notice of trespass. While we disagree with the district court's analysis of the issue, we need not decide whether the privately-issued trespass notice by itself deprived Henderson of a reasonable expectation of privacy because, under the unique circumstances here, the complex had authority pursuant to its lease agreement with Henderson's fiancée to exclude Henderson from his fiancée's apartment.

"When reviewing a district court's pretrial order on a motion to suppress evidence, [appellate courts] review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). Where the facts are stipulated, our review is "entirely de novo." *See State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

The Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution guarantee the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A search does not violate a person's constitutional rights unless he or she has a legitimate

3

expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 430 (1978). "To establish a protected interest, a defendant must demonstrate (1) a subjective expectation of privacy and (2) that this expectation was reasonable in light of longstanding social customs that serve functions recognized as valuable by society." *State v. Stephenson*, 760 N.W.2d 22, 25 (Minn. App. 2009) (quotations omitted), *review denied* (Minn. Apr. 21, 2009); *see also Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring).

Henderson argues that he had a subjective expectation of privacy in his fiancée's apartment because he lived there for approximately five years prior to receiving the notice of trespass, listed his fiancée's address on his driver's license, received mail at the apartment, kept personal items in the apartment, and answered the door when the officers knocked just like a resident would. The district court agreed and determined that Henderson displayed a subjective expectation of privacy in his fiancée's apartment. The state does not dispute that Henderson had a subjective expectation of privacy, but challenges the reasonableness of Henderson's expectation of privacy in light of the notice of trespass.

Henderson argues that the district court erred in concluding that he did not have an expectation of privacy "that society objectively recognizes as reasonable due to [his] unlawful presence." Whether a subjective expectation of privacy is objectively reasonable is determined by examining the totality of the facts and circumstances of each case. *Rakas*, 439 U.S. at 152, 99 S. Ct. at 435 (Powell, J., concurring).

4

We begin by acknowledging that "[i]t is well-settled law that individuals have a reasonable expectation of privacy in their own homes." *In re Welfare of B.R.K.*, 658 N.W.2d 565, 572 (Minn. 2003). Overnight guests enjoy the same protections as residents under the Fourth Amendment. *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S. Ct. 1684, 1688 (1990). In Minnesota, even short-term social guests enjoy Fourth Amendment protection. *B.R.K.*, 658 N.W.2d at 576.

The record indicates that prior to the events in question, at a minimum, Henderson was a regular overnight guest. Therefore, we assume Henderson had a reasonable expectation of privacy in his fiancée's apartment prior to the issuance of the trespass notice. For Henderson to have lost that expectation, the trespass notice must have operated to remove it.

The district court determined that after the complex issued the trespass order to Henderson, he was "prohibited from his partner's residence." Relying on our reasoning in *Stephenson*, the district court determined that once Henderson was prohibited from being present on the complex premises, society no longer "objectively recognize[s] [his] expectation of privacy in [his fiancée's] apartment."

In *Stephenson*, we affirmed the district court's denial of the defendant's motion to suppress and held that the order for protection (OFP) barring defendant from a residence eliminated any reasonable expectation of privacy at the residence. 760 N.W.2d at 26–27. Stephenson was subject to an OFP prohibiting his presence at his wife's residence for a period of two years, and an officer discovered Stephenson hiding in his wife's residence in violation of the OFP. *Id.* at 23–24. After being charged with misdemeanor violation of

5

the OFP, Stephenson challenged the constitutionality of the warrantless search. *Id.* at 24. Although Stephenson owned the residence, we determined that he failed to demonstrate that he had a subjective expectation of privacy, and even if he did have a subjective expectation of privacy, he did not have "a reasonable expectation of privacy in a home from which he . . . [was] excluded." *Id.* at 23. Although the holding in *Stephenson* is explicitly limited to situations where a defendant challenges a warrantless search performed "in a [location] from which [the defendant] was excluded *by a valid court order*," the state argues that *Stephenson* authorizes this search. *Id.* (emphasis added).

Henderson argues that the district court's reliance on *Stephenson* was improper because that case is distinguishable. Specifically, Henderson argues that because he was given consent by his fiancée to be in her apartment, he was not trespassing in the apartment, his presence was not unlawful, and therefore his expectation of privacy within his fiancée's apartment was not affected by the trespass notice. Henderson suggests that a decision from this court concluding that this trespass notice has the effect of a court order would eviscerate the Fourth Amendment protections afforded overnight guests in rental properties, effectively turning a trespass notice into a search warrant.

Our decision in *Stephenson* flows from the general principle that "one wrongfully on the premises could not move to suppress evidence obtained as a result of searching them." *Rakas*, 439 U.S. at 141, 99 S. Ct. at 429. However, the careful wording used in *Stephenson* suggests that we were very conscious of the significance of the court order barring Stephenson from the residence on the Fourth Amendment analysis in that case. 760 N.W.2d at 23 ("Because there was a specific and valid legal order prohibiting

6

[Stephenson's] presence at the home at the time the police officer conducted the search, [Stephenson] had no reasonable expectation of privacy. . . ."). In *Stephenson*, we specifically determined that Stephenson "had no right to be at the residence." *Id.* at 26–27. Because of the OFP, we determined that Stephenson's presence at his residence was "unlawful." *Id.* at 27. For *Stephenson* to apply here, Henderson's presence in his fiancée's apartment at the time of his arrest must also have been "unlawful."

The trespass notice in this case was issued pursuant to Minn. Stat. § 609.605 and Minneapolis, Minn., Code of Ordinances (MCO) § 385.380 (2013). Both the statute and the ordinance require that two separate activities occur before a defendant is guilty of criminal trespass: (1) a prohibited entry onto property accompanied by a notice to leave and not return, and (2) a return to the property without valid permission.[1] Therefore, in order to determine whether Henderson's presence in his fiancée's apartment was lawful, and thus that he had an expectation of privacy that society would recognize, we must consider whether there is evidence that Henderson, after being told to leave and not return, returned to the complex without valid permission.

Here, the parties do not dispute that the complex issued a trespass notice barring Henderson from the complex. The more complicated issue is whether Henderson returned to his fiancée's apartment without valid permission. The issue then becomes whether

---

[1] The statute requires that a person must be "told to leave the property and not to return," and subsequently "return[] to the property . . . without claim of right to the property or consent of one with authority to consent" before his activity is criminal. Minn. Stat. § 609.605. Similarly, the ordinance requires a person be given a "demand to depart" by the lawful possessor, and the same person must "reenter. . . without . . . permission" before his activity is wrongful. MCO § 385.380.

7

Henderson's fiancée had the authority to permit Henderson to be in her apartment notwithstanding the trespass notice.

Generally, a tenant under a valid lease has possessory rights in the leased property superior to those of a lessor. *See, e.g., Neilan v. Braun*, 354 N.W.2d 856, 859 (Minn. App. 1984). It follows then, that absent a provision in the lease to the contrary, under both Minn. Stat. § 609.605, subd. 1(b)(8) ("consent of one with authority to consent") and MCO § 385.380 ("permission of a lawful possessor"), the permission Henderson needed to enter his fiancée's apartment was his fiancée's, not the complex's.

Although the lease is not in the record, Henderson's fiancée conceded at the suppression hearing that she had forfeited her right to invite guests to her apartment who had been issued trespass notices by the complex. Also, at oral argument before this court, Henderson conceded this point. Based upon this record, Henderson is unable to show that at the time the apartment was searched, his fiancée was authorized under the terms of the lease to consent to his presence in her apartment.

Henderson bears the burden of demonstrating that his expectation of privacy was objectively reasonable. *See Stephenson*, 760 N.W.2d at 25. Given both Henderson's and his fiancée's concessions that the complex had the authority to prohibit Henderson's presence under the terms of her lease, and the absence of any evidence in the record to the contrary, we cannot say that Henderson has met his burden here.

**Affirmed.**

8